## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION** | **CASE NO. 12-MD-02311** |
| | **HON. MARIANNE O. BATTANI** |
| **In Re: FUEL INJECTION SYSTEMS** | **Case No. 2:13-cv-02201-MOB-MKM** |
| **THIS RELATES TO:** | **Case No. 2:15-cv-13423-MOB-MKM** |
| **ALL DIRECT PURCHASER ACTIONS** | |

### MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH THE MITSUBA DEFENDANTS AND FOR PROVISIONAL CERTIFICATION OF THE DIRECT PURCHASER MITSUBA SETTLEMENT CLASS

Direct Purchaser Plaintiff Vitec, L.L.C. ("Plaintiff") hereby moves the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for preliminary approval of the proposed settlement with Defendants MITSUBA Corporation and American Mitsuba Corporation (collectively, "MITSUBA") and for provisional certification of the MITSUBA Settlement Class. In support of this motion, Plaintiff relies upon the accompanying memorandum of law, which is incorporated by reference herein.

The parties do not request a hearing for this motion. MITSUBA consents to this motion and to the entry of the proposed order preliminarily approving the proposed settlement and provisionally certifying the MITSUBA Settlement Class.

DATED: February 7, 2019                    Respectfully submitted,

                                            /s/David H. Fink
                                           David H. Fink (P28235)
                                           Darryl Bressack (P67820)
                                           Nathan J. Fink (P75185)

FINK BRESSACK
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500

*Interim Liaison Counsel for the Direct
Purchaser Plaintiff*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
  & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 238-1700

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
  & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
Two Commerce Square
2001 Market Street, Suite 3420
Philadelphia, PA  19103
Telephone: (215) 496-0300

**Interim Co-Lead Counsel for the Direct Purchaser Plaintiff**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION** | **CASE NO. 12-MD-02311**<br><br>**HON. MARIANNE O. BATTANI** |
| **In Re: FUEL INJECTION SYSTEMS** | **Case No. 2:13-cv-02201-MOB-MKM** |
| **THIS RELATES TO:**<br><br>**ALL DIRECT PURCHASER ACTIONS** | **Case No. 2:15-cv-13423-MOB-MKM** |

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH THE MITSUBA DEFENDANTS AND FOR PROVISIONAL CERTIFICATION OF THE DIRECT PURCHASER MITSUBA SETTLEMENT CLASS**

### TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

STATEMENT OF ISSUES PRESENTED...................................................................... vi

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................ vii

I.      INTRODUCTION ..................................................................................... 1

II.     BACKGROUND ........................................................................................ 1

III.    TERMS OF THE SETTLEMENT AGREEMENT ..................................... 2

        A.      The Proposed Settlement Class.................................................... 3

        B.      The Settlement Amount ................................................................ 4

        C.      Release ........................................................................................... 4

        D.      Cooperation .................................................................................. 4

IV.     PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
        WARRANTED ........................................................................................... 5

        A.      The Governing Standards. ............................................................ 5

        B.      The Proposed Settlement Provides Valuable Benefits to the Class. ...................... 7

        C.      Consideration of the Final Approval Factors Supports Preliminary Approval of
                the Proposed Settlement................................................................ 7

                1.      The Class Representatives and Class Counsel Have Adequately
                        Represented the Class, and the Settlement was Reached at Arm's Length. 9

                2.      The Relief Provided to the Class is Adequate. ..................... 11

                        a.      The Costs, Risks, and Delay of Trial and Appeal......................... 12

                        b.      The Effectiveness of Any Proposed Method of Distributing Relief
                                to the Class, Including the Method of Processing Class Member
                                Claims, if Required. ................................................... 15

                        c.      The Terms of Any Proposed Award of Attorney's Fees, Including
                                Timing of Payment. ..................................................... 16

                        d.      There Are No Separate Agreements Relating to the Proposed
                                Settlement. ............................................................... 16

                3.      The Settlement Treats Class Members Equitably
                        Relative to Each Other............................................... 16

                4.      The Settlement is Consistent with the Public Interest. ............... 17

V.      PROVISIONAL CERTIFICATION OF THE PROPOSED DIRECT PURCHASER
        MITSUBA SETTLEMENT CLASS IS WARRANTED .................................. 17

        A.      The Proposed MITSUBA Settlement Class Satisfies Rule 23(a). ............... 18

                1.      The Proposed MITSUBA Settlement Class is Sufficiently Numerous. ... 18

2.     There are Common Questions of Law and Fact. ..................................... 19

3.     Plaintiff's Claims are Typical of Those of the MITSUBA Settlement
       Class. .......................................................................................................... 20

4.     Plaintiff Will Fairly and Adequately Protect the Interests of the MITSUBA
       Settlement Class. ........................................................................................ 20

B.   Plaintiff's Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement
     Purposes. ......................................................................................................... 21

1.     Common Legal and Factual Questions Predominate. ............................... 22

2.     A Class Action is Superior to Other Methods of Adjudication. ............... 23

C.   Plaintiff Is Not Seeking Authorization To Send Notice At This Time. ................ 24

VI.   CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................... 17, 22, 23

*Barry v. Corrigan*,
  79 F. Supp. 3d 712 (E.D. Mich. 2015) ........................................................ 19, 20

*Beale v. EdgeMark Financial Corp.*,
  1995 WL 631840 (N.D. Ill. Oct. 23, 1995) ....................................................... 25

*Beattie v. CenturyTel, Inc.*,
  511 F.3d 554 (6th Cir. 2007) .......................................................................... 22

*Berry v. Sch. Dist. of City of Benton Harbor*,
  184 F.R.D. 93 (W.D. Mich. 1998) .................................................................. 11

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ....................................................................................... 11

*Date v. Sony Electronics, Inc.*,
  2013 WL 3945981 (E.D. Mich. Jul. 31, 2013) ...................................... 14, 18, 20

*Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ............................................................. 6, 14

*Dick v. Sprint Commc'ns*,
  297 F.R.D. 283 (W.D. Ky. 2014) .................................................................... 10

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*,
  2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ................................................ 19

*Ford v. Fed.-Mogul Corp.*,
  2015 WL 110340 (E.D. Mich. Jan. 7, 2015) .............................................. 12, 14

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) ........................................................................... 6

*Granada Invs. Inc. v. DWG Corp.*,
  962 F. 2d 1203 (6th Cir. 1992) ....................................................................... 17

*Griffin v. Flagstar Bancorp, Inc.*,
  2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ........................................Passim

*Hadix v. Johnson*,
  322 F.3d 895 (6th Cir. 2003) .......................................................................... 16

*Harris v. Reeves*,
  761 F. Supp. 382 (E.D. Pa. 1991) ................................................................... 25

*Hillson v. Kelly Servs. Inc.*,
  2017 WL 279814 (E.D. Mich. 2017) ............................................................... 17

*Hoving v. Lawyers Title Ins. Co.*,
  256 F.R.D. 555 (E.D. Mich. 2009) .................................................................. 22

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) .......................................................................... 19

*In re Auto. Refinishing Paint Antitrust Litig.*,
  617 F. Supp. 2d 336 (E.D. Pa. 2007) ......................................................... 10, 12

iii

*In re Automotive Parts Antitrust Litig. (Wire Harness Cases)*,
  2017 WL 469734 (E.D. Mich. Jan. 4, 2017)................................................... 5
*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003)................................................ 12, 13, 17, 23
*In re Cardizem CD Antitrust Litig,*
  200 F.R.D. 297 (E.D. Mich. 2007)................................................................. 23
*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
  2010 WL 3341200 (W.D. Ky. Aug. 23, 2010).............................................. 10
*In re Flat Glass Antitrust Litig.*,
  191 F.R.D 472 (W.D. Pa. 1999)............................................................... 19, 20
*In re Flonase Antitrust Litig.*,
  284 F.R.D. 207 (E.D. Pa. 2012)..................................................................... 24
*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y.2004)..................................................................... 10
*In re Ikon Office Solutions, Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)..................................................................... 15
*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ...................................................... 6, 7, 13
*In re NASDAQ Market-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y 1996)..................................................................... 24
*In re Packaged Ice Antitrust Litig.*,
  2011 WL 717519 (E.D. Mich. Feb 22, 2011) ....................................... Passim
*In re Packaged Ice Antitrust Litig.*,
  2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ........................................ 5, 6, 10
*In re Packaged Ice Antitrust Litig.*,
  2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ........................................... 10
*In re Polyurethane Foam Antitrust Litig.*,
  2015 WL 1639269 (N.D. Ohio Feb. 26, 2015), appeal dismissed ......................... 8, 9
*In re Pressure Sensitive Labelstock Antitrust Litig.*,
  584 F. Supp. 2d 697 (M.D. Pa. 2008) ............................................................ 7
*In re Scrap Metal Antitrust Litig.*,
  527 F.3d 517 (6th Cir. 2008)......................................................................... 22
*In re Southeastern Milk Antitrust Litig.*, 2:07- CV-208,
  2013 WL 2155379 (E.D. Tenn. May17, 2013) ............................................ 10
*In re Southeastern Milk Antitrust Litig.*,
  2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010) ............................................ 22
*In re Telectronics Pacing Sys. Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001)........................................... 5, 6, 11, 14
*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013)............................................................... 18, 19, 20
*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
  2006 WL 1984363 (E.D. Mich. July 13, 2006)......................................... Passim
*IUE-CWA v. General Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006).............................................................. 12
*Lessard v. City of Allen Park*,
  372 F. Supp. 2d 1007 (E.D. Mich. 2005) ................................................... 12

*Marsden v. Select Medical Corp.*,
  246 F.R.D. 480 (E.D. Pa. 2007) ................................................................ 19
*Olden v. Gardner*,
  294 Fed. Appx. 210 (6th Cir. 2008) ......................................................... 12
*Paper Systems Inc. v. Mitsubishi Corp.*,
  193 F.R.D. 601 (E.D. Wisc. 2000) ............................................................ 23
*Senter v. Gen. Motors Corp.*,
  532 F.2d 511 (6th Cir. 1976) .................................................................... 21
*Sheick v. Auto. Component Carrier LLC*,
  2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ....................... 12, 13, 14
*Sheick v. Automotive Component Carrier LLC*,
  2010 WL 3070130 (E.D. Mich. Aug. 02, 2010) ............................... 10, 21
*Sims v. Pfizer, Inc.*,
  2016 WL 772545 (E.D. Mich. Feb. 24, 2016) .......................................... 12
*Smith v. MCI Telecoms Corp.*,
  1993 WL 142006 (D. Kan. April 28, 1993) .............................................. 15
*Sprague v. General Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) ......................................................... 18, 19, 20
*Thacker v. Chesapeake Appalachia, LLC*,
  259 F.R.D. 262 (E.D. Ky. 2009) .............................................................. 18
*UAW v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) .............................................................. 8, 20
*Van Horn v. Trickey*,
  840 F.2d 604 (8th Cir. 1988) .................................................................... 11
*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983) ....................................................... 12, 13, 14

## Rules

Fed. R. Civ. P. 23 ................................................................................... 8, 9, 25
Fed. R. Civ. P. 23(a) .................................................................................. 18, 21
Fed. R. Civ. P. 23(a)(1) ............................................................................. 18, 19
Fed. R. Civ. P. 23(a)(2) ............................................................................. 19, 20
Fed. R. Civ. P. 23(a)(3) ..................................................................................... 20
Fed. R. Civ. P. 23(a)(4) ............................................................................. 20, 21
Fed. R. Civ. P. 23(b) ................................................................................... 18, 21
Fed. R. Civ. P. 23(b)(3) ................................................................. 18, 21, 22, 23
Fed. R. Civ. P. 23(c)(2)(B) ............................................................................... 25
Fed. R. Civ. P. 23(e)(1)(A) ........................................................................... 5, 24
Fed. R. Civ. P. 23(e)(1)(B) ........................................................................... 5, 17
Fed. R. Civ. P. 23(e) ................................................................................... Passim
Fed. R. Civ. P. 23(e)(2); and (ii) .............................................................. Passim
Fed. R. Civ. P. 23(e)(3) ....................................................................................... 8
Fed. R. Civ. P. 23(g) ........................................................................................... 21

**STATEMENT OF ISSUES PRESENTED**

1.     Whether the proposed settlement between Direct Purchaser Plaintiff Vitec, L.L.C. ("Plaintiff") and Defendants MITSUBA Corporation and American Mitsuba Corporation (collectively, "MITSUBA" or the "Settling Defendants"), as set forth in the Settlement Agreement between the Direct Purchaser Plaintiff and the Settling Defendants, is sufficiently fair, reasonable and adequate to warrant preliminary approval;

2.     Whether the Court should provisionally certify a MITSUBA Settlement Class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for purposes of the settlement only; and

3.     Whether the Court should appoint Vitec, L.L.C. as the representative for the MITSUBA Settlement Class, and the law firms of Freed Kanner London & Millen LLC; Kohn, Swift & Graf, P.C.; Preti, Flaherty, Beliveau & Pachios LLP; and Spector Roseman & Kodroff, P.C. as Co-Lead Class Counsel for the MITSUBA Settlement Class ("Co-Lead Settlement Class Counsel").

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Amchem Prods., Inc. v. Windsor*,
     521 U.S. 591 (1997)

*In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, Doc. No. 497 (E.D. Mich.
     June 20, 2016)

*Date v. Sony Electronics, Inc.*,
     No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013)

*Griffin v. Flagstar Bancorp, Inc.*,
     No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)

*In re Cardizem CD Antitrust Litig.*,
     218 F.R.D. 508 (E.D. Mich. 2003)

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
     248 F.R.D. 483 (E.D. Mich. 2008)

*In re Packaged Ice Antitrust Litig.*,
     No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*In re: Packaged Ice Antitrust Litig.*,
     No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*,
     527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
     722 F.3d 838 (6th Cir. 2013)

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
     No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)

*Sheick v. Auto. Component Carrier LLC*,
     No. 2:09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

*Sprague v. General Motors Corp.*,
     133 F.3d 388 (6th Cir. 1998)

*In re Telectronics Pacing Sys. Inc.*,
     137 F. Supp. 2d 985 (S.D. Ohio 2001)

*UAW v. General Motors Corp.*,
     497 F.3d 615 (6th Cir. 2007)

## I.      INTRODUCTION

Plaintiff, on behalf of a Settlement Class composed of direct purchasers of Fuel Injection Systems in the United States, has reached a settlement with MITSUBA. Under the terms of the proposed settlement, MITSUBA will pay $529,716.[1] MITSUBA has also agreed to provide substantial cooperation to assist Plaintiff in the prosecution of the claims against the remaining Defendants.

Plaintiff respectfully moves this Court for an Order preliminarily approving the proposed settlement with MITSUBA, and provisionally certifying the MITSUBA Settlement Class. Plaintiff will seek authorization to disseminate notice to members of the Proposed Settlement Class pursuant to a plan to be submitted to the Court in a separate motion at a later date.

## II.     BACKGROUND

In September 2015, Plaintiff filed a class action lawsuit[2] against Defendants on behalf of direct purchasers of "Fuel Injection Systems."[3] Plaintiff alleges that Defendants conspired to raise,

---

[1] As discussed in Section III. B of this Memorandum, the MITSUBA Settlement Agreement is subject to rescission.

[2] *Irving Levine Automotive Distributors, Inc. v. Aisan Industry, Co., Ltd., et al.,* 2:15-cv-13423, Doc. No. 1 (E.D. Mich. Sept. 29, 2015). In May 2015, Direct Purchaser Plaintiffs also filed another suit by a different proposed class representative as to Fuel Injection Systems, *All European Auto Supply, Inc. v. Aisan Industry, Co., Ltd., et al.,* 2:15-cv-11827, Doc. No. 1 (E.D. Mich. May 20, 2015). The plaintiff in that action, All European Auto Supply, Inc., voluntarily dismissed the case against all defendants on November 10, 2017. *All European Auto Supply, Inc. v. Aisan Industry, Co., Ltd., et al.,* 2:15-cv-11827, Doc. No. 24 (E.D. Mich. Nov. 10, 2017). More recently, another Fuel Injection Systems suit in this MDL was filed on behalf of Vitec, L.L.C. *See Vitec, L.L.C. v. Keihin Corporation, et al.,* 2:18-cv-12858, Doc. No. 1 (E.D. Mich. September 13, 2018). On September 24, 2018, this Court entered an order allowing Vitec, L.L.C. to be substituted as the named plaintiff in place of Irving Levine Automotive Distributors, Inc. in Case No. 2:15-cv-13423, referenced above. Consistent with the Court's substitution order, this Motion for Preliminary Approval is filed by Vitec, L.L.C. on behalf of itself and the proposed MITSUBA settlement class.

[3] "Fuel Injection Systems" admit fuel or fuel/air mixture into engine cylinders and may include fuel injectors, high pressure pumps, rail assemblies, feed lines, electronic throttle bodies,

fix, maintain, and stabilize prices, rig bids, and allocate the supply of Fuel Injection Systems sold in the United States, in violation of federal antitrust laws. Plaintiff further alleges that as a result of the conspiracy, it and other direct purchasers of Fuel Injection Systems were injured by paying more for those products than they would have paid in the absence of the alleged illegal conduct, and Plaintiff seeks recovery of treble damages, together with reimbursement of costs and an award of attorneys' fees.

## III.   TERMS OF THE SETTLEMENT AGREEMENT

After months of negotiations with MITSUBA's counsel, Plaintiff reached a settlement with MITSUBA on June 29, 2018, as amended on December 3, 2018. The Settlement Agreement (attached as Exhibit 1) was executed after arm's-length and good-faith negotiations between experienced and sophisticated counsel. As part of the settlement negotiations, the parties communicated extensively, and Settlement Class Counsel analyzed information provided to them by the Settling Defendants, relevant industry data, and other pertinent information. In addition, the merits of the respective parties' positions were discussed and evaluated.

The settlement with MITSUBA is the result of these good-faith negotiations, after factual investigation and legal analysis by experienced counsel, and is based upon the attorneys' full understanding of the strengths and weaknesses of their claims and defenses and their clients'

---

engine control units, fuel pumps, fuel pump modules, pressure regulators, pulsation dampers, electronic throttle motors, as well as an array of meters (e.g., airflow meters and/or air mass meters), sensors (e.g., air mass sensors, altitude sensors, boost pressure sensors, cam position sensors, manifold absolute pressure sensors, mark sensors, phase sensors, pressure sensors, and/or speed sensor temperature sensors), and valves (e.g., check valves, cut-off valves, injection valves, and/or purge control valves), and other components sold as a unitary system, as part of a broader system, such as an engine management system, or as separate components. The listed parts in the preceding sentence are encompassed by the definition "Fuel Injection Systems" regardless of whether they are used in the Fuel Injection Systems or for some other purpose.

2

respective positions. Plaintiff believes that the proposed settlement is fair, reasonable and adequate for the proposed Settlement Class.

The material terms of the proposed settlement are summarized below.

### A.    The Proposed Settlement Class

Plaintiff and MITSUBA seek certification of the MITSUBA Settlement Class, which is defined as follows:

> All individuals and entities who purchased Fuel Injection Systems in the United States directly from one or more Defendants (or their subsidiaries, affiliates, or joint-ventures) from January 1, 2000 through March 12, 2018.  Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

Exhibit 1 at ¶ 10.

For purposes of the Proposed Settlement Class definition, the following entities are Defendants: Aisan Industry Co., Ltd; Franklin Precision Industry, Inc.; Aisan Corporation of America; Hyundam Industrial Co., Ltd; Hitachi Automotive Systems, Ltd.; Hitachi Automotive Systems Americas, Inc.; Hitachi, Ltd.; Denso Corporation; Denso International America, Inc.; Denso International Korea Corporation; Keihin Corporation; Keihin North America, Inc.; Maruyasu Industries Co., Ltd.; Mikuni Corporation; Mikuni American Corporation; MITSUBA Corporation; American Mitsuba Corporation; Mitsubishi Electric Corporation; Mitsubishi Electric US Holdings, Inc.; Mitsubishi Electric Automotive America, Inc.; Robert Bosch GmbH; and Robert Bosch LLC.

**B.      The Settlement Amount**

The Settlement Amount is $529,716. MITSUBA will pay the settlement funds into an interest-bearing escrow account.  Exhibit 1 at ¶¶ 24-25.[4]

**C.      Release**

The Settlement Agreement provides, *inter alia*, for the release by Plaintiff and the other members of the Settlement Class of certain claims against MITSUBA and other "Releasees" (as defined in the Settlement Agreement) concerning price fixing, bid-rigging, or market, customer or supply allocation of Fuel Injection Systems that were purchased in the United States directly from a Defendant.

The release specifically excludes certain claims against the MITSUBA Defendants, including claims based on indirect purchases of Fuel Injection Systems; claims based on negligence, personal injury, or product defects; and claims relating to purchases of Fuel Injection Systems outside the United States. Exhibit 1 at ¶ 22.

**D.      Cooperation**

This is a partial settlement of the claims in this litigation, as it is with the MITSUBA Defendants only. Plaintiff is continuing to prosecute the case against the remaining Defendants. MITSUBA has agreed to assist Plaintiff in the prosecution of the lawsuit against the remaining Defendants by providing the following types of cooperation: (a) the production of documents, data and other information potentially relevant to Plaintiff's claims; (b) assistance in understanding information produced to Plaintiff and facilitating the use of such information at trial; (c) meetings between Settlement Class Counsel and the MITSUBA Defendants' attorneys, who will provide

---

[4] MITSUBA's sales to members of the Proposed Settlement Class remain in the case as a potential basis for joint and several liability and damages against other current Defendants and co-conspirators.  Exhibit 1 at ¶ 45.

information relevant to the claims in this litigation; (d) witness interviews (e) depositions; and (f) trial testimony. Exhibit 1 at ¶¶ 32-39.

## IV.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS WARRANTED

### A.   The Governing Standards.

Approval of a class action settlement involves a three-step process: "(1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, Doc. No. 497, at 8 (E.D. Mich. June 20, 2016) (quoting *In re Telectronics Pacing Sys. Inc.,* 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001)). *See also In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010); *Manual For Complex Litig. (Fourth)* § 21.63 (2004).

Recent amendments to Rule 23 (effective December 1, 2018) have codified the preliminary approval process. First, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Notice "is justified by the parties' showing that the court will likely be able to: (1) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). The amended Rule 23(e) preliminary approval procedure is substantively the same as that previously approved in the Sixth Circuit and applied by this Court in prior *Auto Parts Litigation* settlements, namely a preliminary two-part determination that (1) the settlement is approvable and (2) the settlement class can be certified. *See, e.g., In re Automotive Parts Antitrust Litig. (Wire Harness Cases),* 2017 WL 469734, at *1 (E.D. Mich. Jan. 4, 2017) (granting preliminary approval upon making preliminary determinations that the settlement was

5

approvable and a settlement class could be certified); *Packaged Ice*, 2010 WL 3070161 at *4 (determining "whether the proposed settlement has the 'potential' for final approval and … whether there is reason enough to notify class members and to proceed with a fairness hearing") (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir. 1982)).

The court "bases its preliminary approval of a proposed settlement upon its familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement." *In re Telectronics Pacing Sys. Inc.,* 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001). "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with[in] the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement." *Telectronics,* 137 F. Supp. 2d at 1015 (quoting *Manual for Complex Litig. (Second)* §30.44 (1985)); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *4 (E.D. Mich. July 13, 2006). A proposed settlement falls within the "range of possible approval" under Rule 23(e) where there is a conceivable basis for presuming that the proposed settlement will meet the more rigorous standards applied for final approval. The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2); *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.,* 248 F.R.D. 483, 495-96 (E.D. Mich. 2008). The final determination must await the final hearing where the fairness, reasonableness and adequacy of the settlement are assessed under the applicable final approval factors. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).

B.      **The Proposed Settlement Provides Valuable Benefits to the Class.**

The settlement provides for a cash payment by MITSUBA of $529,716. The settlement amount constitutes a meaningful recovery and reflects consideration of information obtained through Settlement Class Counsel's factual investigation and legal analysis.

Another important aspect of the settlement is the substantial amount of meaningful cooperation that MITSUBA has agreed to provide.  *See, e.g.*, *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 11 ("Of great importance in the Court's assessment is the provision in the Settlements requiring discovery cooperation of certain Settling Defendants."). Cooperation is a "substantial benefit" to the class when settling with fewer than all defendants. *Linerboard*, 292 F. Supp. 2d at 643. The cooperation to be provided by MITSUBA under the Settlement Agreement provides just such a substantial benefit to the class. *In re Packaged Ice Antitrust Litig.*, 2011 WL 717519, at *10 (E.D. Mich. Feb 22, 2011); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("the benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment").

C.      **Consideration of the Final Approval Factors Supports Preliminary Approval of the Proposed Settlement.**

Fed. R. Civ. P. 23(e)(2) provides that a court may approve a settlement that would bind class members only after a hearing and finding that the settlement is "fair, reasonable, and adequate." *See Packaged Ice*, 2011 WL 717519, at *8. As noted above, the Court is not required at the preliminary approval stage to determine whether it will grant final approval of the proposed settlement, only that it is likely that it would.  Here, initial consideration of the final approval factors supports preliminary approval of the settlement.

The 2018 amendments to Rule 23(e) sets forth a list of factors for a court to consider before approving a proposed settlement as "fair, reasonable, and adequate."  The factors are whether:

    (A)  the class representatives and class counsel have adequately represented the class;

    (B)  the proposal was negotiated at arm's length;

    (C)  the relief provided for the class is adequate, taking into account:

        (i)     the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;

        (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)   any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Historically, courts in the Sixth Circuit have considered factors comparable to those in Rule 23(e)(2) in determining whether a settlement is approvable. *See In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2016 WL 9280050, at *5 (E.D. Mich. Nov. 28, 2016) (considering "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest"). *Accord UAW v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007); *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *3 (E.D. Mich. Dec. 12, 2013) ; *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 1639269, at *3 (N.D. Ohio Feb. 26, 2015), appeal dismissed (Dec. 4, 2015). The Advisory Committee Notes to Rule 23 acknowledge these judicially created standards, explaining that the newly enumerated Rule 23(e) factors are "core concerns" in every settlement and were not intended to displace a

court's consideration of other relevant factors in a particular case. Fed. R. Civ. P. 23 advisory committee note (2018 Amendment).

Accordingly, Plaintiff will address the "fair, reasonable and adequate" factors under Rule 23(e)(2) and the Sixth Circuit's and this Court's prior preliminary approval decisions. A review of the factors supports preliminary approval of the MITSUBA settlement.[5]

### 1. The Class Representatives and Class Counsel Have Adequately Represented the Class, and the Settlement was Reached at Arm's Length.

The first two factors of Rule 23(e)(2) (adequate representation by the class representative and class counsel and whether the settlement was reached at arm' length) are procedural and focus on the history and conduct of the litigation and settlement negotiations. Fed. R. Civ. P. 23 Advisory Committee Note. Relevant considerations may include the experience and expertise of plaintiffs' counsel, the quantum of information available to counsel negotiating the settlement, the stage of the litigation and amount of discovery taken, the pendency of other litigation concerning the subject matter, the length of the negotiations, whether a mediator or other neutral facilitator was used, the manner of negotiation, whether attorney's fees were negotiated with the defendant and if so how they were negotiated and their amount, and other factors that may demonstrate the fairness of the negotiations. *Id.*

The Plaintiff and Settlement Class Counsel have adequately represented the Proposed Settlement Class in connection with the MITSUBA settlement, and the litigation in general. The Plaintiff's interests are the same as those of the Settlement Class members, and Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation.

---

[5] Notably, the Court has already preliminarily approved settlements in the Fuel Injection Systems case involving the HIAMS and MELCO Defendants.  The Court should preliminarily approve the settlement with the MITSUBA Defendants for the same reasons that it approved the settlements with the HIAMS and MELCO Defendants.

They have represented the direct purchaser plaintiffs from the inception of the *Automotive Parts Antitrust Litigation* and negotiated this settlement at arm's length with well-respected and experienced counsel for MITSUBA. There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion. *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Ford,* 2006 WL 1984363, at *26; *Sheick v. Automotive Component Carrier LLC,* No. 09–14429, 2010 WL 3070130, at *19-20 (E.D. Mich. Aug. 02, 2010). Settlements reached by experienced counsel that result from arm's-length negotiations are entitled to deference from the court. *Dick v. Sprint Commc'ns*, 297 F.R.D. 283, 296 (W.D. Ky. 2014) ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate....") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08–MD01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *accord In re Southeastern Milk Antitrust Litig.*, 2:07-CV-208, 2013 WL 2155379, at *5 (E.D. Tenn. May17, 2013); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d. 336, 341 (E.D. Pa. 2007).

The negotiations that led to the settlement were at all times conducted at arm's length, took months to complete, and included a mediation before the Court-appointed mediator. Although there has been no formal discovery in this action, relevant information about the Fuel Injection Systems conspiracy was obtained from Defendants and through Settlement Class Counsel's investigation.[6]  This information and Settlement Class Counsel's legal analysis allowed Settlement

---

[6] Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline amount of discovery required to satisfy this factor. *Packaged Ice*, 2010 WL 3070161, at *5-6. The "question is whether the parties had adequate information about their claims." *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y.2004)). *Accord In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 6209188, at *13 (E.D. Mich. Dec. 13, 2011) (absence of formal discovery not an obstacle to settlement approval).

Class Counsel to evaluate not only the strengths and weaknesses of the legal case, but also the potential value of the promised cooperation by MITSUBA. Based on this information, Settlement Class Counsel believe that the proposed settlement with MITSUBA is fair, reasonable, and in the best interests of the Settlement Class, and their opinion supports both preliminary (and final) approval of the settlement.[7]

Because the proposed settlement was negotiated at arm's length by experienced counsel knowledgeable about the facts and the law, consideration of this factor fully supports preliminary approval of the settlement.

### 2.    The Relief Provided to the Class is Adequate.

The relief provided to the class is $529,716 in cash and substantial cooperation in the continued prosecution of the claims against the non-settling Defendants. Settlement Class Counsel believe that the cash and cooperation is adequate relief for the Settlement Class.

Generally, in evaluating a proposed class settlement, the court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981). There are two reasons for this. First, the object of settlement is to avoid the determination of contested issues, so the approval process should not be converted into an abbreviated trial on the merits. *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988). Second, "[b]eing a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *Telectronics,* 137 F. Supp. 2d at 1008-09 (citing *Manual (Third)* §30.42). This is particularly true in the case of class actions. *Berry v. Sch. Dist. of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998).

---

[7] There was no negotiation of attorney's fees. At an appropriate time, Plaintiff's counsel will file a motion seeking an award attorney's fees and expenses.

11

Both the Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits." *See, e.g., Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 11 (quoting *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013)). *Accord Sims v. Pfizer, Inc.*, No. 1:10-CV-10743, 2016 WL 772545, at *6 (E.D. Mich. Feb. 24, 2016). A court's inquiry on final approval is whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park,* 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich,* 720 F.2d 909, 921-23 (6th Cir. 1983)); *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008). This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 522 (E.D. Mich. 2003); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *14-15 (E.D. Mich. Oct. 18, 2010).

### a.  The Costs, Risks, and Delay of Trial and Appeal.

When considering the adequacy of the relief to the class in determining the fairness of a class action settlement, the court should assess it "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick*, 2010 WL 4136958, *15 (quoting *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006)); *Ford*, 2006 WL 1984363, at *21; *Ford v. Fed.-Mogul Corp.*, No. 2:09-CV-14448, 2015 WL 110340, at *6 (E.D. Mich. Jan. 7, 2015). These risks must be weighed against the settlement consideration: here the certainty of a cash payment in the amount of $529,716 plus cooperation, which is valuable to the Settlement Class members as they continue to litigate against the remaining Defendants. *See*

12

*Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 12 ("cooperation strongly militates toward approval" of the settlements) (quoting *Linerboard*, 292 F. Supp. 2d at 643).

Settlement Class Counsel believe that the settlement is an excellent result. Weighing the settlement's benefits against the risks and costs of continued litigation tilts the scale toward approval. *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9. Plaintiff is optimistic about the likelihood of ultimate success in this case, but success is not certain. As this Court has previously noted, success is not guaranteed even in those instances where a settling defendant has pleaded guilty in a criminal proceeding brought by the Department of Justice. That is because the DOJ is not required to prove class-wide impact or damages, both of which require complex and expensive expert analyses, and the outcome of litigating those issues is uncertain. *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 11.

MITSUBA is represented by highly experienced and competent counsel. MITSUBA undoubtedly would deny Plaintiff's allegations of liability and damages and assert a number of defenses, and Plaintiff believes MITSUBA is prepared to defend this case through trial and appeal. Risk is inherent in any litigation, and this is particularly true with respect to class actions. So, while optimistic about the outcome of this litigation, Plaintiff must acknowledge the risk that MITSUBA could prevail with respect to certain legal or factual issues, which could reduce or eliminate any potential recovery.

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem,* 218 F.R.D. at 523 (quoting *Vukovich,* 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are

"inherently complex." *Telectronics,* 137 F. Supp. 2d at 1013 (settlement avoids the costs, delays, and multitude of other problems associated with complex class actions).

Plaintiff is still litigating with the remaining Defendants, so it is not appropriate to discuss with any specificity Settlement Class Counsel's analysis of the risks of litigation as the remaining Defendants could seek to use any such disclosures against Plaintiff going forward. Settlement Class Counsel believe that at this point it is sufficient to state that complex antitrust litigation of this scope has certain inherent risks that the settlement at least partially negates.

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *Delphi*, 248 F.R.D. at 498. Counsel's judgment "that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18); *Fed.-Mogul Corp.*, 2015 WL 110340, at *9. "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922–23).

Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation. They have represented the direct purchaser plaintiffs from the inception of the *Automotive Parts Antitrust Litigation* and negotiated this settlement at arm's length with well-respected and experienced counsel for MITSUBA. Settlement Class Counsel believe that the proposed settlement eliminates the risks, expense and delay with respect to a recovery from MITSUBA, ensures a substantial payment to the Settlement Class, and provides the Settlement

14

Class with cooperation that will be used to pursue the claims against the remaining Defendants. This factor also supports preliminary approval of the proposed settlement.

>   **b.   The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims, if Required.**

This case does not present any difficulties in identifying claimants or distributing settlement proceeds. Consistent with the practice in previously approved *Automotive Parts Litigation* direct purchaser settlements, Settlement Class Counsel intend to propose that the net settlement funds be distributed pro rata to approved claimants.  Claims will be processed using a settlement claims administrator to review claim forms, to assist Settlement Class Counsel in making recommendations to the Court concerning the disposition of those claims, and to mail checks to approved claimants for their pro-rata shares of the net settlement fund.

As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is a reasonable one. *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000); *Smith v. MCI Telecoms Corp.*, No. Civ. A. 87-2110-EEO, 1993 WL 142006, at *2 (D. Kan. April 28, 1993); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions, §12.35, at 350 (4th ed. 2002) ("Newberg") (noting that pro-rata allocation of a settlement fund "is the most common type of apportionment of lump sum settlement proceeds for a class of purchasers" and "has been accepted and used in allocating and distributing settlement proceeds in many antitrust class actions"). This Court, and numerous others, have approved similar pro-rata distribution plans. *See, e.g.,* 2:12-cv-00601, Doc. No. 172; 2;12-cv-00101, Doc. No. 572).  This factor supports preliminary approval.

**c. The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment.**

The Settlement Agreement provides that attorney's fees shall be paid solely out of the Settlement Fund subject to court approval, and that final approval of the settlement is not contingent on the outcome of any petition for attorney's fees. Exhibit 1 at ¶ 31. Settlement Class Counsel intend to seek attorney's fees of approximately 30% of the Settlement Fund, consistent with previous fee petitions and awards approved by this Court in the *Automotive Parts Antitrust Litigation.* This factor supports preliminary approval.

**d. There Are No Separate Agreements Relating to the Proposed Settlement.**

The Settlement Agreement reflects all of the agreements and understandings relating to the proposed settlement, and there is no separate agreement that would affect the settlement amount, the eligibility of class members to participate in the settlement or exclude themselves from it, or the treatment of class member claims. This factor is therefore neutral.

**3. The Settlement Treats Class Members Equitably Relative to Each Other.**

Class members will be treated equitably relative to each other in terms of their eligibility for a pro-rata portion of the settlement fund and their right to opt-out. Likewise, each class member gives the same release.

The Settlement Agreement does contemplate that Settlement Class Counsel may seek an incentive award for the class representative, as has been done in other cases. Such awards are justified as an incentive and reward for the efforts that lead plaintiffs take on behalf of the class. *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). The settlement was provided to the class representative for its review and approval without any discussion of incentive awards, which evinces that the prospect of such an award was not the reason the representative plaintiff approved

16

this settlement. *Hillson v. Kelly Servs. Inc.*, 2017 WL 279814, at *6 (E.D. Mich. 2017). Plaintiff submits that this factor supports preliminary approval.

### 4.     The Settlement is Consistent with the Public Interest.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs. Inc. v. DWG Corp.,* 962 F. 2d 1203, 1205 (6th Cir. 1992). *Accord Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12. Plaintiff submits that there is no countervailing public interest that provides a reason to disapprove the proposed settlement. *Griffin*, 2013 WL 6511860, at *5. This factor also supports approval.

Consideration of the above factors supports preliminary approval of the proposed MITSUBA settlement. Settlement Class Counsel respectfully submit that the proposed settlement is in the best interests of the Settlement Class and should be preliminarily approved.

## V.     PROVISIONAL CERTIFICATION OF THE PROPOSED DIRECT PURCHASER MITSUBA SETTLEMENT CLASS IS WARRANTED

Rule 23 as amended now explicitly requires the Court to determine whether it is likely to be able to certify the proposed settlement class for purposes of judgment on the settlement proposal. Fed. R. Civ. P. 23(e)(1)(B). It is well established that a class may be certified for purposes of settlement. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 24. At this juncture, the Court need only decide that certification of the proposed MITSUBA Settlement Class is "likely" in order to justify sending notice to Settlement Class members. Plaintiff will later seek final approval of the Settlement Class for purposes of the settlement. *See Ford*, 2006 WL 1984363, at *3, *18; *Cardizem,* 218 F.R.D. at 516-17. As it did with its preliminary approval analysis, Plaintiff will address the factors for final

17

certification here. *See Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266-70 (E.D. Ky. 2009).[8]

As demonstrated below, the Settlement Class meets all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes, and therefore it is likely that the Court will be able to certify the Proposed MITSUBA Settlement Class

**A.    The Proposed MITSUBA Settlement Class Satisfies Rule 23(a).**

Certification of a class requires meeting the requirements of Fed. R. Civ. P. 23(a) and one of the subsections of Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Griffin*, 2013 WL 6511860, at *5; *Ford*, 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Griffin*, 2013 WL 6511860, at *5; *Date,* 2013 WL 3945981, at *3.

**1.    The Proposed MITSUBA Settlement Class is Sufficiently Numerous.**

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a)(1). There is no strict numerical test to satisfy the numerosity requirement; the most important factor is whether joinder of all the parties would be impracticable for any reason. *Whirlpool*, 722 F.3d at 852 (noting that a "substantial" number of class members satisfies numerosity). Moreover, numerosity is not

---

[8] Paragraph 10 of the proposed MITSUBA Preliminary Approval Order provides that provisional certification of the Settlement Class will be without prejudice to the rights of any Defendant to contest certification of any other class proposed in these coordinated actions. *See Packaged Ice*, 2011 WL 717519, at *7.

determined solely by the size of the class, but also by the geographic location of class members. *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Here, Settlement Class Counsel believe that there are numerous direct purchasers of Fuel Injection Systems, geographically dispersed throughout the United States. Thus, joinder of all Settlement Class members would be impracticable, satisfying Rule 23(a)(1).

### 2.    There are Common Questions of Law and Fact.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class." "We start from the premise that there need be only one common question to certify a class," *Whirlpool*, 722 F.3d at 853, and "the resolution of [that common issue] will advance the litigation." *Sprague*, 133 F.3d at 397. *Accord Barry v. Corrigan*, 79 F. Supp. 3d 712, 731 (E.D. Mich. 2015); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, No. 10-cv-10620, 2010 WL 5439737, at * 3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996)).

It has long been the case that "allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D 472, 478 (W.D. Pa. 1999) (citing 4 NEWBERG ON CLASS ACTIONS, § 18.05-15 (3d ed. 1992)). Here, whether Defendants entered into an agreement to artificially fix prices of Fuel Injection Systems is a factual question common to all members of the Settlement Class because it is an essential element of proving an antitrust violation. *See, e.g., Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 25. Common legal questions include whether, if such an agreement was reached, Defendants violated the antitrust laws and the impact on Class members. *Packaged Ice*, 2011 WL 717519, at *6 (holding commonality satisfied by questions concerning "whether Defendants conspired to allocate

19

territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members"). "Indeed, consideration of the conspiracy issue would, of necessity focus on defendants' conduct, not the individual conduct of the putative class members." *Flat Glass*, 191 F.R.D. at 484. Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

### 3. Plaintiff's Claims are Typical of Those of the MITSUBA Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 WL 6511860, at *6 (quoting *Ford Motor*, 2006 WL 1984363, at *19); *Date*, 2013 WL 3945981, at *3.

"Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399). Here, Plaintiff's claims arise from the same course of conduct as the claims of the other members of the MITSUBA Settlement Class, namely, the Defendants' alleged violations of the antitrust laws. Plaintiff and the Settlement Class are proceeding on the same legal claim and same alleged violation of Section 1 of the Sherman Antitrust Act. *See UAW*, 497 F. 3d at 625; *Barry*, 2015 WL 136238, at *13. Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4. Plaintiff Will Fairly and Adequately Protect the Interests of the MITSUBA Settlement Class.

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. "There are two criteria for determining adequacy of representation: (1) the proposed class representative must have common interests with the other class members; and (2)

20

it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel." *Sheick*, 2010 WL 3070130, at *3 (quoting *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 524-25 (6th Cir. 1976)).

These requirements are met here. The interests of the proposed representative of the MITSUBA Settlement Class, Plaintiff Vitec, L.L.C., are the same as those of other Settlement Class members. Plaintiff is a direct purchaser of Fuel Injection Systems from one or more of the Defendants in the United States. Plaintiff and the other Settlement Class members claim that they were injured as a result of the alleged conspiracy and seek to prove that Defendants violated the antitrust laws. Plaintiff's interests are thus aligned with those of the MITSUBA Settlement Class.

Moreover, Plaintiff has retained qualified and experienced counsel to pursue this action.[9] Settlement Class Counsel vigorously represented Plaintiff and the Settlement Class in the settlement negotiations with the Settling Defendants and have vigorously prosecuted this action. Adequate representation under Rule 23(a)(4) is therefore satisfied.

### B.    Plaintiff's Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.

In addition to satisfying Rule 23(a), Plaintiff must show that the putative class falls under at least one of the three subsections of Rule 23(b). Here, the Settlement Class qualifies under Rule 23(b)(3), which authorizes class certification if [1] "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and…

---

[9] Rule 23(g) requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The Court previously appointed Freed Kanner London & Millen LLC; Kohn, Swift & Graf, P.C.; Preti, Flaherty, Beliveau & Pachios LLP; and Spector Roseman & Kodroff, P.C. as Interim Co-Lead Counsel in this case and all other *Automotive Parts Antitrust Litigation* direct purchaser cases. They submit that, for the same reasons that the Court appointed them to those positions, their appointment as Co-Lead Settlement Class Counsel is appropriate.

[2] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

### 1.    Common Legal and Factual Questions Predominate.

The Rule 23(b)(3) requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive to warrant certification."   *Amchem*, 521 U.S. at 623. The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).

Courts have repeatedly recognized that horizontal price-fixing cases are particularly well-suited for class certification because proof of the conspiracy is a common, predominating question. *See, e.g., Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 27; *Scrap Metal*, 527 F.3d at 535; *Packaged Ice*, 2011 WL 717519, at 6; *In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV-208, 2010 WL 3521747, at *5, 9-11 (E.D. Tenn. Sept. 7, 2010). Affirming class certification in *Scrap Metal,* the Sixth Circuit observed that the "district court found that the '*allegations* of price-fixing and market allocation…will not vary among class members'…. Accordingly, the court found that the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied." 527 F.3d at 535 (emphasis in original).

In this case the same core set of operative facts and theory of liability apply across the Settlement Class. As discussed above, whether Defendants entered into an illegal agreement to artificially fix prices of Fuel Injection Systems is a question common to all Settlement Class members because it is an essential element of proving an antitrust violation. Common questions also include whether, if such an agreement was reached, Defendants violated the antitrust laws,

and whether Defendants' acts caused anticompetitive effects. *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *6. If Plaintiff and the other members of the Settlement Class were to bring their own individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability. Therefore, common proof of Defendants' violations of antitrust law will predominate.

### 2.   A Class Action is Superior to Other Methods of Adjudication.

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).

All Fuel Injection Systems litigation has been centralized in this Court. If a Settlement Class member wants to control its own litigation, it can request exclusion from the Settlement Class. Thus, consideration of factors (1) - (3) demonstrates the superiority of a class action.

With respect to factor (4), in *Amchem,* 521 U.S. at 620, the Court explained that when a court is asked to certify a settlement-only class it need not consider the difficulties in managing a trial of the case because the settlement will end the litigation without a trial. *See Cardizem,* 218 F.R.D. at 517.

In addition, even though the Settlement Class is not composed of small retail purchasers, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own." *In re Cardizem CD Antitrust Litig*, 200 F.R.D. 297, 325 (E.D. Mich. 2007) (quoting *Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wisc. 2000)). Moreover, by proceeding as a class action, both judicial and private resources will

be more efficiently utilized to resolve the predominating common issues, which will bring about a single outcome that is binding on all members of the Settlement Class. *See, e.g., Cardizem*, 200 F.R.D. at 351 ("The economies of time, effort and expense will be achieved by certifying a class in this action because the same illegal anticompetitive conduct by Defendants gives rise to each class member's economic injury."). The alternatives to a class action are a multiplicity of separate lawsuits with possibly contradictory results for some plaintiffs, *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012), or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive. *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y 1996). Thus, class litigation is superior to the alternatives in this case.

**C.    Plaintiff Is Not Seeking Authorization To Send Notice At This Time.**

As recently amended, Rule 23(e) frames the preliminary approval inquiry as a decision about whether to notify the class about the settlement. *See* Fed. R. Civ. P. 23(e)(1)(A) ("The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class"). Settlement Class Counsel are not seeking leave to disseminate notice at this time. Rather, in the interests of economy and efficiency, and consistent with settlements involving fewer than all defendants in some of the other *Automotive Parts Litigation* cases, Settlement Class Counsel propose deferring class notice and the distribution of claim forms until a later date with a view towards possibly combining notice of more than one settlement. For example, in the *Wire Harness Cases*, settlement notice regarding some of the early settlements was deferred in order to save money for the Settlement Class and avoid the potential for confusion caused by multiple notices. *See* Motion for Authorization to Disseminate Notice to Direct

Purchaser Settlement Classes of Proposed Settlements with Chiyoda, Fujikura, Leoni, Sumitomo, and Yazaki Defendants, and Related Matters, 2:12-cv-00101 (Doc. No. 469).

The 2018 Amendments to Rule 23 spell out the required contents of a class notice and the factors a court must evaluate in determining whether the proposed notice is "the best notice that is practicable under the circumstances," but do not specify the timing of notice. Fed. R. Civ. P. 23(c)(2)(B). The timing of class notice is thus within the discretion of the Court. *Beale v. EdgeMark Financial Corp.*, No. 94-C-1890, 1995 WL 631840, at *4 (N.D. Ill. Oct. 23, 1995); *Harris v. Reeves*, 761 F. Supp. 382, 393 (E.D. Pa. 1991). At an appropriate time, Settlement Class Counsel will submit for Court approval the proposed forms of notices and plans for dissemination that will most likely hew very closely to the settlement class notices the Court has approved in prior *Automotive Parts Litigation* direct purchaser settlements.

Deferring notice will not prejudice the proposed Settlement Class members, who are not bound by any judgment or release until they have received notice and an opportunity to exclude themselves or object. In the meantime, the Settlement Class members will benefit from the public announcement of a substantial ice-breaker settlement and will receive the cooperation that MITSUBA has promised. For these reasons, Plaintiff respectfully requests the Court to grant preliminary approval to the proposed MITSUBA Settlement, but defer decisions about the content, methods, and timing of notice.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the MITSUBA settlement and provisionally certify the Settlement Class.

DATED: February 7, 2019                    Respectfully submitted,

                                                   /s/David H. Fink
                                                   David H. Fink (P28235)
                                                   Darryl Bressack (P67820)

25

Nathan J. Fink (P75185)
FINK BRESSACK
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500

*Interim Liaison Counsel for the Direct*
*Purchaser Plaintiff*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
   & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 238-1700

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
   & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
Two Commerce Square
2001 Market Street, Suite 3420
Philadelphia, PA  19103
Telephone: (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiff*

26

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2019, I electronically filed the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to all counsel of record registered for electronic filing.

FINK BRESSACK

By: /s/Nathan J. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
nfink@finkbressack.com

27