# EXHIBIT 10

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311<br>Honorable Marianne O. Battani |
| In Re: Oxygen Sensors | 2:15-cv-03101 |
| This Document Relates to:<br>All Direct Purchaser Actions | |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this 4th day of February 2019 ("Execution Date") by and between the DENSO Defendants (as defined below in Paragraph 8) and Direct Purchaser Plaintiff(s) (as defined below in Paragraph 9), both individually and on behalf of a proposed class of direct purchasers of Oxygen Sensors ("Settlement Class"), as more particularly defined below in Paragraph 17.

WHEREAS, Direct Purchaser Plaintiff(s) are prosecuting the above-captioned *In re Automotive Parts Antitrust Litigation*, Master File No. 2:12-md-02311 (E.D. Mich.) (the "MDL Proceeding"), and Case No. 2:15-cv-03101 (the "Action"), on their own behalf and on behalf of the Settlement Class;

WHEREAS, Direct Purchaser Plaintiff(s) allege that they were injured as a result of the DENSO Defendants' participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers for Oxygen Sensors (as defined in Paragraph 1) in violation of Section 1 of the Sherman Act, as set forth in the Amended Class Action Complaint (Sept. 27, 2016) (ECF No. 40) ("Complaint");

WHEREAS, the DENSO Defendants deny Direct Purchaser Plaintiff(s)' allegations and have asserted and/or would assert defenses to Direct Purchaser Plaintiff(s)' claims in the Action;

WHEREAS, neither this Agreement nor any of the terms set forth herein constitute an admission by the DENSO Defendants of the truth of any of the claims or allegations advanced by Direct Purchaser Plaintiff(s) in this Action or any action in the MDL Proceeding, or evidence of any violation of any statute or law, or of any liability or wrongdoing by the DENSO Defendants;

WHEREAS, arm's-length settlement negotiations have taken place between Settlement Class Counsel (as defined below in Paragraph 18) and counsel for the DENSO Defendants, and this Agreement has been reached as a result of those negotiations, including with the assistance of a mediator;

WHEREAS, Direct Purchaser Plaintiff(s), through Settlement Class Counsel, have investigated the facts and the law regarding the Action and have concluded that resolving the claims asserted in the Action against the DENSO Defendants, according to the terms set forth below and the terms set forth in Appendix A, is in the best interest of Direct Purchaser Plaintiff(s) and the Settlement Class;

WHEREAS, the Action may continue against Defendants (as defined below in Paragraph 7) that are not Releasees (as defined below in Paragraph 14);

WHEREAS, the DENSO Defendants, despite their belief that they are not liable for the claims asserted and have good defenses thereto, have nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted

against the DENSO Defendants with respect to Oxygen Sensors based on the allegations in the Action, as more particularly set forth below;

WHEREAS, the DENSO Defendants have provided cooperation to Direct Purchaser Plaintiffs in certain of the Collective Actions pursuant to the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA") and have agreed to provide Cooperation (as defined below in Paragraph 5) to Direct Purchaser Plaintiff(s) in the ongoing prosecution of this Action as set forth in this Agreement, and such Cooperation will aid the Direct Purchaser Plaintiff(s) and will reduce the substantial burden and expense associated with the ongoing prosecution of the Action;

WHEREAS, Direct Purchaser Plaintiff(s) recognize the benefits of the DENSO Defendants' Cooperation, and recognize that because of joint-and-several liability, this Agreement with the DENSO Defendants does not impair Direct Purchaser Plaintiff(s)' ability to collect the full amount of damages to which they and the Settlement Class may be entitled from any current or future non-settled defendants in the Action, including any damages attributable to the DENSO Defendants' conduct; and

WHEREAS, in addition to this Agreement, separate settlement agreements have been entered into between the DENSO Defendants and the Direct Purchaser Plaintiff(s), as those terms are defined in the respective separate settlement agreements (the "Collective Settlement Agreements," as defined below in Paragraph 4), to resolve the Collective Actions (as defined below in Paragraph 2) regarding the Collective Released Parts (as defined below in Paragraph 3), certain provisions of which were negotiated among the parties collectively for all the Collective Released Parts, and certain provisions of which are referred to in this Agreement;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Releasees and except as hereinafter provided, without costs as to Direct Purchaser Plaintiff(s), the Settlement Class, or the DENSO Defendants or other Releasees, subject to the approval of the Court, on the following terms and conditions:

A.    Definitions

1.    "Oxygen Sensors" includes all parts as described in all complaints filed in the Action at any time prior to the date on which class notice has been disseminated to members of the Settlement Class, as defined below in Paragraph 17, including their respective components, and modules and assemblies for which the parts are a component.

2.    "Collective Actions" collectively means those actions in the MDL Proceeding in which Direct Purchaser Plaintiff(s), as that term is defined in each of the respective Collective Settlement Agreements, are or previously were prosecuting claims against the DENSO Defendants (as that term is defined in each of the respective Collective Settlement Agreements), or any action that, for the purpose of providing the DENSO Defendants with a complete and final dismissal of the particular matter with prejudice, may subsequent to the Execution Date be initiated by such Direct Purchaser Plaintiff(s) against such DENSO Defendants, regarding Wire Harness Products (Case No. 2:12-cv-00101), Instrument Panel Clusters (Case No. 2:12-cv-00201), Fuel Senders (Case No. 2:12-cv-00301), Heater Control Panels (Case No. 2:12-cv-00401), Alternators (Case No. 2:13-cv-00701), Windshield Wiper Systems (Case No. 2:13-cv-00901), Radiators (Case No. 2:13-cv-01001); Starters (Case No. 2:13-cv-01101), Ignition Coils (Case No. 2:13-cv-01401), Fuel Injection Systems (Case No. 2:13-cv-02201), Power Window Motors (Case No. 2:13-cv-02301), Valve Timing Control Devices (Case No. 2:13-cv-02501), Air Conditioning Systems (Case No.

2:13-cv-02701), Windshield Washers Systems (Case No. 2:13-cv-02801), Spark Plugs (Case No. 2:15-cv-03001), Oxygen Sensors (Case No. 2:15-cv-03101), and Ceramic Substrates (Case No. 2:17-cv-13785).

3.     "Collective Released Parts" collectively means Wire Harness Products, Instrument Panel Clusters, Fuel Senders, Heater Control Panels, Alternators, Windshield Wiper Systems, Radiators, Starters, Ignition Coils, Fuel Injection Systems, Power Window Motors, Valve Timing Control Devices, Air Conditioning Systems, Windshield Washers Systems, Spark Plugs, Oxygen Sensors, and Ceramic Substrates, as those terms are defined in their respective settlement agreements.

4.     "Collective Settlement Agreements" means all settlement agreements entered into among the DENSO Defendants and Direct Purchaser Plaintiff(s), as defined in such settlement agreements, to resolve the Collective Actions.

5.     "Cooperation" shall refer to those provisions set forth below in Paragraphs 41–42 of this Agreement and Paragraphs 1–9 in Appendix A.

6.     "Cooperation Materials" means any information, testimony, Documents (as defined below in Paragraph 10) or other material (including information from attorney proffers) provided by any of the DENSO Defendants or their counsel under the terms of this Agreement, including the provisions set forth in Appendix A.

7.     "Defendant" means, for purposes of this Agreement only, the following entities, including their parents, subsidiaries, and affiliates: Robert Bosch GmbH, Robert Bosch LLC, DENSO Corporation, DENSO International America Inc., DENSO Products & Services Americas, Inc., NGK Spark Plug Co. Ltd., NGK Spark Plugs (U.S.A.), Inc., NGK Spark Plugs (U.S.A) Holding, Inc., NTK Technologies, Inc., and Hitachi, Ltd., as well as any other party named

as a defendant in the Action prior to, on, or after the Execution Date of this Agreement up to the date on which class notice has been disseminated to members of the Settlement Class, as defined below in Paragraph 17, under Federal Rule of Civil Procedure 23(c).  Settlement Class Counsel represents that it is not aware of any other entity that it believes should be included as a defendant to this Action and does not presently intend to supplement the Complaint to name additional defendants.

8.      The "DENSO Defendants" means DENSO Corporation, DENSO International America, Inc., DENSO Korea Corporation (f/k/a separately as DENSO International Korea Corporation and DENSO Korea Automotive Corporation), DENSO Automotive Deutschland GmbH, DENSO Products & Services Americas, Inc., ASMO Co., Ltd., ASMO North America, LLC, ASMO Greenville of North Carolina, Inc., and/or ASMO Manufacturing, Inc., to the extent they are or previously were named defendant(s) in the Action, or are subsequently added as named defendant(s) in the Action prior to the date of Final Court Approval.

9.      "Direct Purchaser Plaintiff(s)" means those Settlement Class Members, as defined in Paragraph 19, who are or previously were named plaintiff(s) in the Action, or who are subsequently added as named plaintiff(s) in the Action, prior to the entry of final judgment against the DENSO Defendants in the Action.

10.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure, including electronically stored information.  A draft or non-identical copy of a document is a separate document within the meaning of this term.

11.      "Opt-Out Deadline" means the deadline set by the Court for the timely submission of requests by members of the Settlement Class to be excluded from the Settlement Class.

12.    "Protective Orders" means the Stipulation and Protective Order Governing the Production and Exchange of Confidential Information, Case No. 12-md-2311 (E.D. Mich. July 10, 2012) (ECF No. 200), and any other similar order(s) entered in the Action.

13.    "Released Part" shall refer to Oxygen Sensors (as defined in Paragraph 1).

14.    "Releasees" shall refer jointly and severally, individually and collectively to the DENSO Defendants, and to each of their past and present owners, parents, subsidiaries, affiliates, divisions, predecessors, successors, and assigns, and their respective past and present officers, directors, employees, insurers, agents, and attorneys.  Releasees does not include any Defendant in the Action as of July 20, 2018, other than the DENSO Defendants.

15.    "Releasors" shall refer jointly and severally, individually and collectively to Direct Purchaser Plaintiff(s) and the Settlement Class Members (as defined in Paragraph 19), as well as each of their parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, and assigns, and their respective past and present officers, directors, employees, insurers, agents, and attorneys.

16.    "Settlement Amount" for this Agreement is USD $100,000.

17.    For purposes of this Agreement, the "Settlement Class" is defined as:

> All individuals and entities who purchased Oxygen Sensors in the United States directly from one or more Defendant(s) (or their subsidiaries, affiliates, or joint ventures) from January 1, 2000 through the Execution Date.  Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

18.    "Settlement Class Counsel" shall refer to the law firms of:

Freed Kanner London & Millen LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015

Kohn, Swift & Graf, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103

Preti, Flaherty, Beliveau & Pachios, LLP
One City Center
Portland, ME 04101

Spector Roseman & Kodroff, P.C.
Two Commerce Square
2001 Market Street, Suite 3420
Philadelphia, PA 19103

19.    "Settlement Class Member" means each member of the Settlement Class who has

not timely and validly elected to be excluded from the Settlement Class.

20.    "Settlement Fund" means the Settlement Amount plus any income or interest

earned upon this sum after it is deposited into the Escrow Accounts (as defined below in Paragraph

33).

21.    "Total Settlement Amount" shall be USD $2,100,000.  The Total Settlement

Amount covers settlements for all of the Collective Released Parts.

B.    Approval of this Agreement and Dismissal of Claims Against the DENSO Defendants

22.    On the Execution Date, Direct Purchaser Plaintiff(s) and the DENSO Defendants

shall be bound by this Agreement, and this Agreement shall not be rescinded except in accordance

with Paragraphs 43–46 of this Agreement.

23.    Direct Purchaser Plaintiff(s) and the DENSO Defendants shall use their best efforts

to effectuate this Agreement, including cooperating in seeking the Court's approval for the

establishment of procedures (including the giving of class notice under Federal Rules of Civil

Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Action as

to the Releasees.

24.     To the extent Direct Purchaser Plaintiff(s) have not yet brought a claim against the DENSO Defendants concerning the Released Part or to the extent such claim has been dismissed in the Action, Direct Purchaser Plaintiff(s) shall, for the sole and exclusive purpose of effectuating this Agreement, file or re-file such claim against the DENSO Defendants, as the case may be, within thirty (30) days of the Court's granting Preliminary Approval (as defined in Paragraph 25) to this Agreement.  The DENSO Defendants reserve all of the legal rights and defenses they may have concerning such claim, including the right to move to compel arbitration or otherwise seek the dismissal of any claim filed or re-filed pursuant to this Paragraph 24 if this Agreement does not obtain Final Court Approval.  In addition, if this Agreement does not obtain Final Court Approval or it is rescinded or terminated pursuant to Paragraphs 43–46, the Direct Purchaser Plaintiff(s) agree (i) to immediately and voluntarily dismiss any claim filed or re-filed against the DENSO Defendants pursuant to this Paragraph 24, provided such dismissal shall be on the same terms as the prior dismissal, and (ii) that such obligation shall survive and remain binding on Direct Purchaser Plaintiff(s) in the event this Agreement is rescinded or terminated pursuant to Paragraphs 43–46.

25.     Within forty-five (45) days of the Execution Date, Direct Purchaser Plaintiff(s) shall submit to the Court, in a form mutually agreed upon by the DENSO Defendants and Settlement Class Counsel, a motion seeking preliminary approval ("Preliminary Approval") of this Agreement (the "Preliminary Approval Motion").  The Preliminary Approval Motion shall include the proposed form of an order preliminarily approving this Agreement.  The terms of the proposed order preliminarily approving this Agreement will include, at a minimum, the substance of the following provisions:

(a)      preliminarily approving this Agreement as being fair, reasonable, and adequate to the Settlement Class;

(b)      preliminarily certifying the Settlement Class as meeting the standards for a settlement class under Federal Rule of Civil Procedure 23;

(c)      appointing the law firms identified in Paragraph 18 of this Agreement as Settlement Class Counsel;

(d)      appointing the Direct Purchaser Plaintiff(s) as class representatives of the Settlement Class;

(e)      directing that notice be given to the Settlement Class Members at a time and in a manner consistent with the terms of this Agreement;

(f)      approving the establishment of the Escrow Accounts (as defined below in Paragraph 33);

(g)      providing that (i) the Court's Preliminary Approval of this Agreement and preliminary certification of the Settlement Class is without prejudice to, or waiver of, the rights of any Defendant, including the DENSO Defendants, to contest certification of any class proposed in the MDL Proceeding, (ii) the Court's findings in the order shall have no effect on the Court's ruling on any motion to certify any class in the MDL Proceeding, and (iii) no party may cite or refer to the Court's preliminary approval of the Settlement Class as persuasive or binding authority with respect to any contested motion to certify any such class; and

(h)      staying the Action against the DENSO Defendants for all purposes except those necessary to effectuate this Agreement.

26.      Direct Purchaser Plaintiff(s), at a time to be decided in their sole discretion, shall submit to the Court a motion for authorization to disseminate notice of the settlement and final

judgment contemplated by this Agreement to all members of the Settlement Class identified by Direct Purchaser Plaintiff(s) from the customer lists provided by all Defendants (the "Notice Motion"). The Notice Motion shall provide for notice to all members of the Settlement Class in a method designed to meet the requirements of Rule 23 and the Due Process Clause. The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice in the Action. To mitigate the costs of notice and administration, Direct Purchaser Plaintiff(s) shall use best efforts, if practicable, to disseminate notice of this settlement with notice of any other settlements reached in this Action and to apportion costs of notice and administration on a pro rata basis across the applicable settlements. Before submission, the DENSO Defendants shall have a reasonable opportunity to review and comment on the Notice Motion, and Direct Purchaser Plaintiff(s) shall reasonably consider the DENSO Defendants' comments.

27.     Direct Purchaser Plaintiff(s) shall seek at the earliest practicable time, and the DENSO Defendants will not object unreasonably to, the entry of an order and final judgment in the Action, the text of which Direct Purchaser Plaintiff(s) and the DENSO Defendants shall agree upon, and such agreement will not be unreasonably withheld. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

(a)     certifying the Settlement Class defined in Paragraph 17, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement, as a settlement class for the Action;

(b)     as to the Action, approving finally this settlement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

(c)      directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 30) and claims to be waived and released pursuant to Paragraph 31.

(d)      as to the DENSO Defendants, directing that the Action be dismissed with prejudice and, except as provided for in this Agreement, without costs;

(e)      reserving exclusive jurisdiction over the settlement and this Agreement, including the interpretation, administration, and consummation of this settlement, as well as over the DENSO Defendants, for the duration of their provision of Cooperation pursuant to this Agreement, to the United States District Court for the Eastern District of Michigan;

(f)      determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action shall be final;

(g)      providing that (i) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any Defendant, including the DENSO Defendants, to contest certification of any class proposed in the MDL Proceeding, (ii) the Court's findings in the order shall have no effect on the Court's ruling on any motion to certify any class in the MDL Proceeding, and (iii) no party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any contested motion to certify any such class; and

(h)      enjoining Releasors from prosecuting any Released Claims.

28.      This Agreement shall become final and be deemed to have received "Final Court Approval" within the meaning of this Agreement when (i) the Court has entered a final order certifying the Settlement Class defined in Paragraph 17 and approving this Agreement under Rule 23(e) and has entered a final judgment dismissing the Action with prejudice as to the DENSO Defendants and without costs other than those provided for in this Agreement, and (ii) the time for

appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and final judgment as to the DENSO Defendants described in subpart (i) hereof has expired and no motion or other pleading has been filed with the Court (or with any other court) seeking to set aside, enjoin, or in any way alter the order granting final approval or the entry of judgment in the Action or to toll the time for appeal of the order granting final approval or final judgment in the Action or, if appealed, approval of this Agreement and the final judgment in the Action as to the DENSO Defendants have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.  It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be considered in determining the above-stated times.

29.    Neither this Agreement (whether or not it becomes final) nor the final judgment, nor any and all negotiations, Documents, or discussions associated with them (including Cooperation Materials produced pursuant to Appendix A, unless they were produced in the normal course of discovery), shall be deemed or construed to be an admission by the Releasees, or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by the Releasees, or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the MDL Proceeding, and evidence thereof shall not be discoverable or used in any way, whether in the Collective Actions, or any other arbitration, action, or proceeding whatsoever, against the Releasees.  Nothing in this Paragraph shall prevent Direct Purchaser Plaintiff(s) from using and/or introducing into evidence Cooperation Materials produced pursuant to Appendix A, subject to the limitations in Appendix A, against any other defendants in the MDL Proceeding, or to develop and promulgate a plan of allocation and distribution of the Settlement Fund.  Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or

proceedings connected with it, nor any other action taken to carry out this Agreement by the DENSO Defendants, shall be referred to, offered as evidence, or received in evidence in any pending or future civil, criminal, or administrative action, arbitration, or proceeding, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims (as defined in Paragraph 30) and/or claims to be waived and released pursuant to Paragraph 31, or as otherwise required by law.

C.    Release, Discharge, and Covenant Not to Sue

30.    In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final, as set out in Paragraph 28 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 32 of this Agreement, the Cooperation provided pursuant to Paragraphs 41–42 and in Appendix A, and for other valuable consideration, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, damages whenever incurred, liabilities of any nature whatsoever (including damages of any kind, penalties, attorneys' fees, and costs), and causes of action, whether class, individual, or otherwise in nature (whether or not any Settlement Class Member has objected to the settlement or makes a claim upon or receives a payment from the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) under any federal, state, local, statutory, or common law of any jurisdiction in the United States, that Releasors, or each of them, ever had, now have, or hereafter can, shall, or may ever have, that now exist or may exist in the future, on account of, or in any way arising out of, any and all known or unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to any conduct, facts, occurrences, or transactions prior to the Execution Date concerning the Released Part, or to any act or omission of any of the Releasees,

Defendants, or co-conspirators now identified or later identified that are alleged, described, or referred to in the Complaint concerning the Released Part, including any conduct and causes of action alleged or asserted, or that could have been alleged or asserted, in any class action or other complaints filed in the Action concerning the Released Part ("Released Claims"), provided, however, that nothing herein shall release:  (1) any claims based on indirect purchases of the Released Part; (2) claims based on negligence, personal injury, breach of contract (unless such breach of contract claim alleges anticompetitive conduct or communications among competitors), bailment, failure to deliver lost goods, damaged or delayed goods, product defect, breach of product warranty, securities, or other similar claim relating to the Released Part; (3) claims brought outside the United States relating to purchases of the Released Part outside the United States; (4) claims under laws other than those of the United States relating to purchases made by Releasors of the Released Part outside of the United States; and (5) claims concerning any product other than the Released Part.  The Releasors covenant and agree that they, and each of them, will forever refrain from instituting, maintaining, prosecuting, or continuing to maintain or prosecute any suit, action, arbitration or any other proceeding of any kind or collecting from, seeking to recover from, or proceeding against the Releasees in connection with any of the Released Claims unless this Agreement, for any reason, does not become final, or is rescinded or otherwise fails to become effective.

31.     In addition to the provisions of Paragraph 30 of this Agreement, Releasors hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming final, as set out in Paragraph 28 of this Agreement, any and all provisions, rights, and benefits, as to their claims concerning the Released Part conferred by Section 1542 of the California Civil Code, which states:

CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR[;]

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.  Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 30 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the DENSO Defendants and Direct Purchaser Plaintiff(s) have agreed to release pursuant to Paragraph 30, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

D.    Settlement Amount

32.    Subject to the provisions hereof, and in full, complete, and final settlement of the Collective Actions as provided herein, the DENSO Defendants shall pay or cause to be paid the Total Settlement Amount of USD $2,100,000.  The Direct Purchaser Plaintiff(s) have allocated $100,000 of the Total Settlement Amount for this Action.  The Total Settlement Amount shall be paid in United States Dollars as a single lump-sum payment into an escrow account to be administered in accordance with the provisions of Paragraph 33 of this Agreement ("DENSO General Holdings QSF") within thirty (30) days following the later of (i) the date the court grants Preliminary Approval in all of the Collective Actions or (ii) the date the DENSO Defendants are provided with the account number, account name, and wiring information for the DENSO General

Holdings QSF.  Thereafter, Settlement Class Counsel shall direct that the Settlement Amount be transferred to a segregated escrow account established specifically for the Released Part ("Oxygen Sensors Escrow Account").  No part of the Total Settlement Amount paid by the DENSO Defendants shall constitute, nor shall it be construed or treated as constituting, a payment for treble damages, fines, penalties, forfeitures, or punitive recoveries.

E.      Qualified Settlement Fund

33.     (a)      The DENSO General Holdings QSF and Oxygen Sensors Escrow Account (collectively, "Escrow Accounts") will be established at Huntington National Bank.  The Escrow Accounts shall be administered under the Court's continuing supervision and control.

(a)      All payments into the Escrow Accounts shall, at the direction of Settlement Class Counsel, be invested in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including U.S. Treasury Bills, U.S. Treasury Money Market Funds, or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit.  Any interest or income earned on any of the foregoing shall become part of the Settlement Fund.  The DENSO Defendants shall have no responsibility for, or liability in connection with, the Settlement Fund or Escrow Accounts, including the investment, administration, maintenance, or distribution thereof.

(b)      The Settlement Fund held in the Escrow Accounts shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as the Settlement Fund shall be distributed pursuant to this Agreement or further order(s) of the Court.

(c)      Subject to the limitation set forth in Paragraph 35, reasonable disbursements for expenses associated with providing notice of the settlement to the Settlement Class, expenses for maintaining and administering the Settlement Fund, and taxes and expenses incurred in

- 17 -

connection with taxation matters may also be paid without approval from the Court and shall not

be refundable to the DENSO Defendants in the event the Agreement is disapproved, rescinded, or

otherwise fails to become effective, to the extent such expenses have actually been expended or

incurred.  Any refund that becomes owed to the DENSO Defendants if this Settlement does not

become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow

Accounts without approval from the Court.  No other disbursement from or distribution of the

Settlement Fund shall be made without prior approval of the Court.

(d)     The Escrow Accounts are intended by the parties hereto to be treated as

"qualified settlement fund[s]" within the meaning of Treas. Reg. § 1.468B-1, and to that end the

parties hereto shall cooperate with each other and shall not take a position in any filing or before

any tax authority that is inconsistent with such treatment. At the request of the DENSO Defendants,

a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable

the Escrow Accounts to be treated as qualified settlement funds from the earliest date possible,

and Settlement Class Counsel shall take all actions as may be necessary or appropriate to this end.

At the direction of Settlement Class Counsel, taxes or estimated taxes shall be paid on any income

earned on the funds in the Escrow Accounts, whether or not final approval has occurred. In the

event federal or state income tax liability is finally assessed against and paid by the DENSO

Defendants as a result of any income earned on the funds in the Escrow Accounts, the DENSO

Defendants shall be entitled to reimbursement of such payment from the funds in the Escrow

Accounts after approval of the Court and whether or not final approval has occurred. The DENSO

Defendants will use reasonable efforts to resist any such assessment or payment. Except as set

forth in this Paragraph, the DENSO Defendants and any Releasee, and their respective counsel,

shall have no responsibility to make any tax filings related to the Settlement Fund or to pay any

taxes or tax expenses with respect thereto, and neither the DENSO Defendants nor any Releasee nor their respective counsel shall have any liability or responsibility for the taxes or expenses incurred in connection with taxation matters.

(e)      If this Agreement does not receive Final Court Approval, including final approval of the Settlement Class as defined in Paragraph 17, if the Action is not certified as a class action for settlement purposes, or if the Settlement Agreement is rescinded or terminated pursuant to Paragraphs 43–46, then all amounts paid by the DENSO Defendants into the Settlement Fund (net of costs properly expended or incurred in accordance with this Paragraph 33, Paragraph 35 and Paragraph 40) shall be returned to the DENSO Defendants from the Escrow Accounts along with any interest accrued thereon within thirty (30) calendar days of the denial of Final Court Approval of the Agreement and/or the Settlement Class or the rescission or termination of this Agreement, as the case may be.

F.      <u>Exclusions</u>

34.      Subject to Court approval, any person or entity seeking exclusion from the Settlement Class must submit a written request for exclusion by the Opt-Out Deadline.  Any person or entity that timely and validly submits such a request shall be excluded from the Settlement Class and shall have no rights with respect to this settlement.   The DENSO Defendants and other Releasees reserve all of their legal rights and defenses they may have for claims of any person or entity excluded from the Settlement Class, including any legal rights and defenses relating to whether any excluded member of the Settlement Class is a direct purchaser of the Released Part or has standing to bring any claim against the DENSO Defendants and/or the other Releasees.

(a)      Subject to Court approval, the written request for exclusion must state the full name, street address, and telephone number of the person or entity seeking exclusion from the Settlement Class.  Subject to Court approval, a request for exclusion that does not comply with all

of the provisions set forth in the class notice will be invalid, and the person(s) or entity(ies) serving the invalid request shall be deemed Settlement Class Member(s) and shall be bound by this Agreement upon Final Court Approval.

(b)     Settlement Class Counsel shall provide the DENSO Defendants within ten (10) days of the Opt-Out Deadline copies of all opt-out requests it receives.

(c)     The DENSO Defendants or Settlement Class Counsel may dispute an exclusion request, and the parties shall, if possible, resolve the disputed exclusion request by agreement and shall inform the Court of their position, and, if necessary, obtain a ruling thereon within thirty (30) days of the Opt-Out Deadline.

G.     <u>Payment of Expenses</u>

35.     The DENSO Defendants agree to permit a reasonable portion, but not more than 25% of the Total Settlement Amount (which limitation is effective up until the date of final approval of the Collective Settlement Agreements) toward the cost of providing notice to the Settlement Classes and the costs of administration of the Settlement Funds in the Collective Actions.  This 25% maximum is the cumulative total for the Collective Settlement Agreements and does not apply to each settlement agreement individually.  In the event that one or more of the Collective Settlement Agreements does not become final or is terminated, the 25% maximum will be reduced pro rata and determined subject to a meet and confer between the DENSO Defendants and Settlement Class Counsel.  To the extent such expenses have been actually incurred or paid for notice and administration costs, those notice and administration expenses (up to the maximum of 25% of the Total Settlement Amount) are not recoupable by the DENSO Defendants if this settlement does not become final or is terminated.  Other than as set forth in this Paragraph and Paragraph 40 (both with regard to costs and expenses that may be paid solely from the Settlement Fund), the DENSO Defendants shall not be liable for any of the costs or expenses of the litigation

of this Action, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings before the Court or Special Master, appeals, trials, or the negotiation of settlements, or for Settlement Class administration and costs.

36.     Within thirty (30) days of Preliminary Approval, the DENSO Defendants will supply to Settlement Class Counsel the names and addresses of putative Settlement Class Members to whom they have sold the Released Part during the Settlement Class Period, to the extent they are identifiable through reasonable efforts.  Pursuant to the Order Granting Direct Purchaser Plaintiffs' Motion to Direct Defendants to Identify Settlement Class Members for Mailing Notice of Future Settlements, 2:17-cv-13147-MOB-MKM (ECF  No. 16) (August 20, 2018), the DENSO Defendants grant permission to Settlement Class Counsel to e-mail non-settling Defendants, notifying them of the existence of a settlement and requesting from non-settling Defendants to the extent not previously provided to Settlement Class Counsel the names and addresses of all persons or entities who directly purchased the Released Part in the United States from any non-settling Defendant(s) or their affiliate(s) during the Settlement Class period.

H.     The Settlement Fund

37.     Releasors shall look solely to the Settlement Fund for settlement and satisfaction of all Released Claims against the DENSO Defendants and the Releasees, and shall have no other recovery against the DENSO Defendants or any other Releasee for any Released Claims.

38.     After this Agreement becomes final within the meaning of Paragraph 28, the Settlement Fund shall be distributed in accordance with plans to be submitted to the Court at the appropriate time by Settlement Class Counsel, subject to approval by the Court.  In no event shall any Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including the costs and

expenses of such investment, distribution, and administration, except as expressly otherwise provided in Paragraphs 33 and 35 (both concerning payments made solely out of the Settlement Fund).

39.     Direct Purchaser Plaintiff(s) and Settlement Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for their expenses and costs, as provided by Court order and the provisions of Paragraphs 33, 35, and 40.  The DENSO Defendants and other Releasees shall not be liable for any costs, fees, or expenses of any of Direct Purchaser Plaintiff(s)' or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, all such costs, fees, and expenses as approved by the Court, or authorized by Paragraphs 33 and 35, shall be paid out of the Settlement Fund.

I.     <u>Settlement Class Counsel's Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for Class Representatives</u>

40.     (a)     Subject to Court approval, Direct Purchaser Plaintiff(s) and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all past, current, or future litigation costs and expenses and any award of attorneys' fees incurred in connection with this Action.  Attorneys' fees and costs and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund with interest, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of costs or expenses is reduced or reversed, or in the event this Agreement is rescinded or terminated pursuant to Paragraphs 43–46.  An incentive award to the Direct Purchaser Plaintiff(s), if approved by the Court, will also be paid

solely out of the Settlement Fund.  No such incentive award will be paid until after Final Court Approval.

(a)     In seeking Final Court Approval of this Agreement, Settlement Class Counsel may apply to the Court for the following payments: (i) an award of attorneys' fees; (ii) reimbursement of reasonable expenses and costs incurred in connection with prosecuting the Action; and (iii) incentive awards for Direct Purchaser Plaintiff(s), plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid), as may be awarded by the Court.  Settlement Class Counsel reserves the right to make additional applications for Court approval of fees and expenses incurred and reasonable incentive awards.  In no event shall Releasees be responsible to pay any fees, expenses, or incentive awards.

(b)     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs, expenses, or incentive awards for class representatives to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceeding relating to any fee and expense application, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

(c)     Other than to pay the Settlement Amount, as provided herein, neither the DENSO Defendants nor any other Releasee shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to any Settlement Class Counsel and/or Direct Purchaser Plaintiff(s) and/or Settlement Class Member and/or any other person who may assert some claim thereto of any award of fees and expenses in the Action.

(d)     Neither the DENSO Defendants nor any other Releasee shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among any Settlement Class Counsel and/or Direct Purchaser Plaintiff(s) or any other person who may assert some claim thereto of any fees and expenses that the Court may award in the Action.

J.     Cooperation

41.     In return for the release and discharge provided herein, in addition to the Settlement Amount they will pay as provided in this Agreement, the DENSO Defendants agree to provide substantial cooperation to Direct Purchaser Plaintiff(s) as set forth in Appendix A and this Section J ("Cooperation").   Appendix A is also incorporated into each and all Collective Settlement Agreements and it is agreed that the obligations set forth in Appendix A will be adjusted as set forth therein if the Court does not approve this Agreement or some or all of the other Collective Settlement Agreements.

42.     The DENSO Defendants and other Releasees need not respond to formal discovery requests from Direct Purchaser Plaintiff(s), produce documents or other discovery in the Action, or otherwise participate in the Action during the pendency of this Agreement, with the exception of the Cooperation provisions set forth in Appendix A.   Other than to enforce the terms of this Agreement, neither the DENSO Defendants nor Direct Purchaser Plaintiff(s) shall file motions against the other, in the Action, during the pendency of this Agreement.

K.     Rescission

43.     If either of the requirements in subparts (i) and (ii) of Paragraph 28 of this Agreement fail to be met, or if the Court refuses to enter Preliminary Approval or otherwise refuses to approve this Agreement or any part hereof, then the DENSO Defendants and Direct Purchaser Plaintiff(s) shall each, in their sole discretion, have the option to rescind this Agreement in its

entirety.  Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 55.

44.     A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses or any incentive award awarded by the Court out of the Settlement Fund shall not be deemed a basis to rescind this Agreement.

45.     In the event that this Agreement does not receive Final Court Approval, or this Agreement otherwise is rescinded or terminated by either party under any provision herein, then: (i) this Agreement shall be of no force or effect, except as expressly provided in this Agreement; (ii) any and all parts of the Settlement Fund on deposit in the Escrow Accounts (including interest and/or income earned thereon) shall be returned forthwith to the DENSO Defendants less only disbursements made, or the amount of obligations incurred, in accordance with Paragraphs 33 and 35 of this Agreement; and (iii) the DENSO Defendants shall be entitled to any tax refunds owing to the Settlement Fund.  At the request of the DENSO Defendants, Settlement Class Counsel shall file claims for any tax refunds owed to the Settlement Fund and pay the proceeds, after deduction of any fees and expenses incurred with filing such claims for tax refunds, to the DENSO Defendants.  The DENSO Defendants expressly reserve all of their rights and defenses if this Agreement does not receive Final Court Approval or is otherwise terminated or rescinded.

46.     Further, and in any event, Direct Purchaser Plaintiff(s) and the DENSO Defendants agree that this Agreement, whether or not it receives Final Court Approval or is otherwise terminated or rescinded by either party under any provision herein, and any and all negotiations, Documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law or of any liability or wrongdoing whatsoever by the DENSO Defendants or any other Releasees, or (ii) the truth of any of the claims or

allegations contained in the Complaint or any other pleading filed in the MDL Proceeding. Evidence derived from this Agreement, and any and all negotiations, Documents, and discussions associated with it shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against the DENSO Defendants or other Releasees (except to enforce this Agreement).

L.      Miscellaneous

47.      This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement as well as Cooperation by the DENSO Defendants.

48.      The DENSO Defendants shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

49.      This Agreement does not settle or compromise any claim by Direct Purchaser Plaintiff(s) or any Settlement Class Member asserted in the Complaint or, if amended, any subsequent complaint, against any Defendant or alleged co-conspirator other than the DENSO Defendants and other Releasees.   All rights against such other Defendants or alleged co-conspirators are specifically reserved by Direct Purchaser Plaintiff(s) and the Settlement Class. All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than the Releasees, for sales made by the DENSO Defendants and the DENSO Defendants' alleged illegal conduct are specifically reserved by Direct Purchaser Plaintiff(s) and Settlement Class Members.   The DENSO Defendants' sales to the Settlement Class and the DENSO Defendants' alleged illegal conduct shall remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability

claims against other current or future Defendants in the Action or other persons or entities other than the DENSO Defendants and other Releasees to the extent permitted by applicable law.

50.     The United States District Court for the Eastern District of Michigan shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Direct Purchaser Plaintiff(s) and the DENSO Defendants.  This Agreement shall be governed by and interpreted according to the substantive laws of the State of Michigan without regard to its choice of law or conflict of laws principles.  The DENSO Defendants will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction.

51.     This Agreement constitutes the entire, complete, and integrated agreement among Direct Purchaser Plaintiff(s) and the DENSO Defendants pertaining to the settlement of the Action against the DENSO Defendants, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Direct Purchaser Plaintiff(s) and the DENSO Defendants in connection herewith. This Agreement may not be modified or amended except in writing executed by Direct Purchaser Plaintiff(s) and the DENSO Defendants, and approved by the Court.

52.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Direct Purchaser Plaintiff(s) and the DENSO Defendants.  Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Direct Purchaser Plaintiff(s) or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors.  The Releasees, other than the DENSO Defendants that are parties hereto,

are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

53.    This Agreement may be executed in counterparts by Direct Purchaser Plaintiff(s) and the DENSO Defendants, and a facsimile or PDF of a signature shall be deemed an original signature for purposes of executing this Agreement.

54.    Neither Direct Purchaser Plaintiff(s) nor the DENSO Defendants shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

55.    Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile, or electronic mail, or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

56.    The DENSO Defendants and Direct Purchaser Plaintiff(s) agree not to disclose publicly or to any other person, except for Releasees where necessary, the terms of this Agreement until this Agreement is submitted to the Court for Preliminary Approval.

57.    Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Steven F. Cherry
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com

*Counsel for the DENSO Defendants*

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Tel.: (248) 372-8252
Fax: (248) 213-2551
steve_zarowny@denso-diam.com

*Counsel for Defendant DENSO International
America, Inc.*

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700
Facsimile: (215) 238-1968
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
& PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME 04112-9546
Telephone: (207) 791-3000
Facsimile: (207) 791-3111
ghansel@preti.com
rweill@preti.com
msmith@preti.com

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
& MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521
skanner@fklmlaw.com
blondon@fklmlaw.com
mmoskovitz@fklmlaw.com

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN &
KODROFF, P.C.

Two Commerce Square
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496 6611
espector@srkw-law.com
bcaldes@srkw-law.com
jjagher@srkw-law.com
jspector@srkw-law.com

*Interim Co-Lead Counsel for the Direct
Purchaser Plaintiff(s) and Settlement Class
Counsel*

## Appendix A

A.      Application of Appendix Across Multiple Settlements

1.      The DENSO Defendants and the Direct Purchaser Plaintiff(s) have agreed to settle the Collective Actions: Wire Harness Cases (Case No. 2:12-cv-00101), Instrument Panel Clusters Cases (Case No. 2:12-cv-00201), Fuel Senders Cases (Case No. 2:12-cv-00301), Heater Control Panels Cases (Case No. 2:12-cv-00401), Alternators Cases (Case No. 2:13-cv-00701), Windshield Wipers Cases (Case No. 2:13-cv-00901), Radiators Cases (Case No. 2:13-cv-01001); Starters Cases (Case No. 2:13-cv-01101), Ignition Coils Cases (Case No. 2:13-cv-01401), Fuel Injection Systems Cases (Case No. 2:13-cv-02201), Power Window Motors Cases (Case No. 2:13-cv-02301), Valve Timing Control Devices Cases (Case No. 2:13-cv-02501), Air Conditioning Systems Cases (Case No. 2:13-cv-02701), Windshield Washer Systems Cases (Case No. 2:13-cv-02801), Spark Plugs Cases (Case No. 2:15-cv-03001), Oxygen Sensors Cases (2:15-cv-03101), and Ceramic Substrates Cases (Case No. 2:17-cv-13785), and they are entering into settlement agreements to settle each of the Collective Actions.  The parties agree that this Appendix A applies equally to and is incorporated into each of the Collective Settlement Agreements.

2.      *Definitions*.  The same definitions in the Collective Settlement Agreements shall apply to this Appendix.  In the event that terms and conditions in this Appendix A may not be executed and fulfilled because of any difference of a definition set forth in any one or more of the Collective Settlement Agreements, the DENSO Defendants and Direct Purchaser Plaintiff(s) shall meet and confer to solve the difference.

B.      Cooperation

3.      In return for the releases and discharges provided in the Collective Settlement Agreements, in addition to the Total Settlement Amount they will pay, the DENSO Defendants agree to provide substantial Cooperation to Direct Purchaser Plaintiff(s) as set forth below, after

A-1

the Preliminary Approval Motions have been granted or denied in all of the Collective Actions, with respect to those Collective Released Parts for which the Court gives Preliminary Approval ("Preliminarily Approved Collective Released Parts"), to the extent the Direct Purchaser Plaintiff(s) continue to prosecute unsettled claims against other Defendants with respect to those Preliminarily Approved Collective Released Parts at the time the DENSO Defendants are to provide the Cooperation.  All such Cooperation shall occur in a manner that complies with the DENSO Defendants' obligations to any Government Entity (defined as the United States Department of Justice ("DOJ"), Japan Fair Trade Commission ("JFTC"), European Commission ("EC"), the Canadian Competition Bureau, and/or any other government entity).  The DENSO Defendants shall not be required to provide documents or other information protected by the work product doctrine or attorney-client privilege, or whose production is prohibited by the relevant antitrust agencies, the law of the relevant foreign jurisdictions, and/or court order.  Cooperation shall be limited to the Preliminarily Approved Collective Released Parts for which the Direct Purchaser Plaintiff(s) continue to pursue unsettled claims against other Defendants at the time the DENSO Defendants are to provide the Cooperation and shall not include documents and other information relating to other parts manufactured by the DENSO Defendants and/or Releasees.

4.     _Documents and Information_:  Consistent with Paragraph 3 of this Appendix, Direct Purchaser Plaintiff(s) may make a written request to counsel for the DENSO Defendants following the grant or denial of all Preliminary Approval Motions in all of the Collective Actions, for the following information or documents, specifying the Preliminarily Approved Collective Released Parts for which such information or documents are sought:

(a)     the names of all current and former employees, directors and officers of the DENSO Defendants who: (1) were interviewed and/or prosecuted by the DOJ in connection with

alleged violations with regard to any of those particular Preliminarily Approved Collective Released Parts; (2) appeared before the grand jury in connection with the DOJ's investigation into alleged antitrust violations with respect to any of those Preliminarily Approved Collective Released Parts; and/or (3) were disclosed to a Government Entity as having knowledge or information relating to investigations into alleged violations with respect to any of those Preliminarily Approved Collective Released Parts. Counsel for the DENSO Defendants shall not be required to disclose to Settlement Class Counsel the specific Government Entities to which each such current or former employee, director, or officer of the DENSO Defendants was identified to or appeared before. DENSO Defendants shall respond to each such request within thirty (30) days of its receipt.

(b) to the extent they have not already been produced to Settlement Class Counsel, documents, if any, provided to Government Entities as of the Execution Date (including all English Translations thereof provided to those Government Entities) relating to their investigation into alleged competition violations with respect to those particular Preliminarily Approved Collective Released Parts. The DENSO Defendants will use reasonable efforts to substantially complete production of Documents in response to each such request within sixty (60) days of its receipt.

(c) subject to meet and confer with the DENSO Defendants,

(i) pre-existing sales and cost transactional data related to particular Preliminarily Approved Collective Released Parts, with respect to sales in the United States from January 1, 1996 to the Execution Date. Such request will not require the DENSO Defendants to compile data from individual invoices, purchase orders, personal computers, backup recording media or devices, hard copy files, manufacturing facilities or similar sources. The DENSO

Defendants shall also provide reasonable assistance to Settlement Class Counsel in understanding any transactional data produced, including, if appropriate, a reasonable number of communications with Direct Purchaser Plaintiff(s)' experts and between technical personnel. The DENSO Defendants will use reasonable efforts to substantially complete production of such data within one hundred twenty (120) days after the parties agree on the data to be provided;

        (ii)     sales and cost transactional data related to particular Preliminarily Approved Collective Released Parts, with respect to sales in the United States from the Execution Date until December 31, 2019. Such request will not require the DENSO Defendants to compile data from individual invoices, purchase orders, personal computers, backup recording media or devices, hard copy files, manufacturing facilities or similar sources. The DENSO Defendants shall also provide reasonable assistance to Settlement Class Counsel in understanding any transactional data produced, including, if appropriate, a reasonable number of communications with Direct Purchaser Plaintiff(s)' experts and between technical personnel. The DENSO Defendants will produce such data at a time agreed upon between the DENSO Defendants and Direct Purchaser Plaintiff(s); and

        (iii)     Documents, if any, which were collected as of the Execution Date in dealing with investigations by Government Entities into alleged competition violations with respect to particular Preliminarily Approved Collective Released Parts which were not provided to Government Entities: (1) that relate to or concern the allegations in the Complaints in the Collective Actions and reflect alleged collusion or attempted alleged collusion with respect to those particular Preliminarily Approved Collective Released Parts, by an employee, officer, or director of the DENSO Defendants with any employee, officer or director of another manufacturer or seller of those Preliminarily Approved Collective Released Parts; (2) concerning the DENSO

Defendants' determinations of its prices for those Preliminarily Approved Collective Released Parts including pricing policies, formulas and guidelines; and (3) showing how employees were trained or instructed to bid and set prices submitted to purchasers or potential purchasers for those Preliminarily Approved Collective Released Parts, in RFQs, or any other procurement process, including Documents stating the lowest bid or price employees were authorized to submit, how to determine the lowest allowable bid or price, and when and how to increase or decrease a proposed bid or price. The DENSO Defendants will use reasonable efforts to substantially complete production of Documents in response to such request within one hundred twenty (120) days after the parties agree on the documents to be provided.

5.      For all Documents withheld from production pursuant to (1) the attorney-client privilege; (2) the work product doctrine; (3) a protective order, or (4) any other applicable privilege or doctrine protecting documents from disclosure, the DENSO Defendants shall provide a privilege log ("Privilege Log"), describing such Documents in sufficient detail as to explain the nature of the privilege asserted or the basis of any other law or rule protecting such Documents.  If any Document protected by the attorney-client privilege, attorney work product protection, or any other privilege is accidentally or inadvertently produced, its production shall in no way be construed to have waived any privilege or protection attached to such Document.  Upon notice by the DENSO Defendants of such inadvertent production, the Document shall promptly be destroyed and/or returned to the DENSO Defendants.

6.      In the event that the DENSO Defendants produce Documents or provide declarations or written responses to discovery to any party in the actions in the MDL Proceeding, concerning or relating to the Preliminarily Approved Collective Released Parts ("Relevant Production"), consistent with Paragraph 3 of this Appendix, the DENSO Defendants shall produce

all such Documents, declarations or written discovery responses to the Direct Purchaser Plaintiff(s) contemporaneously with making the Relevant Production to the extent such Documents, declarations or written discovery responses have not previously been produced by the DENSO Defendants to the Direct Purchaser Plaintiff(s).  This provision does not restrict Settlement Class Counsel from attending and/or participating in any depositions in *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-2311.  Consistent with Paragraph 3 of this Appendix, Settlement Class Counsel may attend and/or participate in any depositions of the DENSO Defendants' witnesses in addition to the depositions set forth in Paragraph 7(c) of this Appendix A, and Settlement Class Counsel together with settlement class counsel for the End Payor Plaintiffs and Automobile Dealership Plaintiffs may ask questions for a combined total of three (3) hours at such depositions, provided that the time for participation of Settlement Class Counsel and settlement class counsel for the End Payor Plaintiffs and Automobile Dealership Plaintiffs shall not expand the time permitted for the deposition as may be provided by the Court, and Direct Purchaser Plaintiff(s) will not ask the Court to enlarge the time of any deposition noticed of a DENSO employee.  To the extent that the person to be deposed requests an interpreter, the deposition shall be limited to a total of four (4) hours.

7.      In addition, consistent with Paragraph 3 of this Appendix, the DENSO Defendants shall also provide Cooperation to Settlement Class Counsel as set forth in (a) through (f) of this Paragraph 7.  All Cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided.  The numerical limits set forth in this Paragraph 7 – including the eight (8)-person limit for interviews, depositions, and trials – are the cumulative totals for the Collective Settlement Agreements.  To the extent possible, any witness interviews or depositions provided pursuant to the below obligations, and any request for transactional data pursuant to

Paragraphs 4(c)(i) and (ii) of this Appendix A, shall be coordinated with, and occur at the same time as, any witness interviews, depositions, and transactional data production to be provided in connection with similar settlement cooperation obligations with the End Payor Plaintiffs and Automobile Dealership Plaintiffs.  The DENSO Defendants shall make reasonable efforts (not to include actual or threatened employee disciplinary action) to make available for interviews, depositions, and testimony at trial, to the extent relevant laws, regulations and/or government authorities' policy permit, up to eight (8) persons for interviews and depositions (as set forth in (b) and (c) of this Paragraph 7), and up to eight (8) persons for trial (as set forth in (d) of this Paragraph 7) who Settlement Class Counsel select together with settlement class counsel for the End Payor and Automobile Dealership Plaintiffs (to the extent the End Payor and Automobile Dealership Plaintiffs remain in the Collective Actions in which the Preliminary Approval Motions have been granted), and which may consist of directors, officers, and/or employees of the DENSO Defendants at the time of the specific request pursuant to (b), (c) and (d) of this Paragraph 7 whom Settlement Class Counsel reasonably and in good faith believe possess knowledge of facts or information that would reasonably assist the Direct Purchaser Plaintiff(s) in the prosecution of the Collective Actions in which the Preliminary Approval Motions have been granted.  The DENSO Defendants shall make witnesses available for such interviews or depositions in their country of residence as of the date of the interview or deposition, unless otherwise agreed to by the parties. If any such interview, deposition, or trial testimony takes place outside of the country of the witness's residence, the Direct Purchaser Plaintiff(s) shall reimburse the DENSO Defendants for such person's economy class fare and $450 per day for lodging and expenses.  In no event shall the Direct Purchaser Plaintiff(s) be responsible for reimbursing such person for time or services rendered.  It is understood that the DENSO Defendants may be unable and thus shall not be

required to make available for any Cooperation events (including interviews, depositions, and trial testimony) the seven individuals referenced in Paragraph 11(b) of the plea agreement between DENSO Corporation and the United States of America (2:12-cr-20063-GCS-PJK, E.D. Mich., ECF No. 9), or any individual who is no longer an officer, director, or employee of any DENSO Defendant.   Settlement Class Counsel shall use reasonable efforts to select for interviews, depositions, and trial testimony the same individuals as those the settlement class counsel for End Payor Plaintiffs and Automobile Dealership Plaintiffs select (to the extent the End Payor Plaintiffs and Automobile Dealership Plaintiffs remain in the Collective Actions in which the Preliminary Approval Motions have been granted).   The total number of interviews provided pursuant to Paragraph 7(b) in Appendix A of each Settlement Agreement for the Collective Released Parts shall be eight (8), and the total number of depositions provided pursuant to Paragraph 7(c) in Appendix A of each Settlement Agreement for the Collective Released Parts shall be eight (8). Settlement Class Counsel may participate in all eight (8) depositions and interviews regardless of the selection process.

(a)     *Attorney Proffers*.  The DENSO Defendants' counsel already has provided attorney proffers to Direct Purchaser Plaintiff(s) and Settlement Class Counsel in certain of the Collective Actions pursuant to confidentiality agreements which shall continue in full force and effect.   Counsel for the DENSO Defendants will make themselves available for reasonable follow-up conversations in connection with the Attorney Proffers, and will use reasonable efforts to respond to questions posed by Settlement Class Counsel relating to the Preliminarily Approved Collective Released Parts.  It is understood that the DENSO Defendants have no obligation to seek new or additional information or documents from any of its employees, officers or directors in connection with any of these follow-up conversations or otherwise; however, the

DENSO Defendants will in good faith consider requests for new or additional information or documents, and will produce such information or documents, if appropriate, in their discretion. The Direct Purchaser Plaintiff(s) may share information learned in Attorney Proffers with End Payor and Automobile Dealership Plaintiffs, to the extent they also continue to prosecute claims with respect to the particular Preliminarily Approved Collective Released Parts against Defendants other than the DENSO Defendants and other Releasees, subject to a commitment of confidentiality and on the condition that it not be used against the DENSO Defendants and/or other Releasees for any purpose whatsoever, but shall not disclose such information to any other parties including other claimants or potential claimants including public entity plaintiffs and opt-out plaintiffs in the MDL Proceeding, except with the express written consent of the DENSO Defendants.  Notwithstanding any other provision of the Collective Settlement Agreements, the parties and their counsel further agree that any Attorney Proffers or other statements made by counsel for the DENSO Defendants in connection with or as part of this settlement shall be governed by Federal Rule of Evidence 408.  Settlement Class Counsel shall not introduce an Attorney Proffer into the record, or depose or subpoena any of the DENSO Defendants' counsel related to an Attorney Proffer.  However, Settlement Class Counsel may otherwise use information contained in such Attorney Proffers or other statements in the prosecution of its claims in all cases in the MDL Proceeding, except any claims against Releasees, and rely on such information to certify that, to the best of Settlement Class Counsel's knowledge, information and belief, such information has evidentiary support or will likely have evidentiary support after reasonable opportunity for further investigation or discovery.

(b)     _Witness Interviews_. Upon reasonable notice after all of the Preliminary Approval Motions have been granted or denied in all of the Collective Actions, the DENSO

Defendants shall, at Direct Purchaser Plaintiff(s)' request, make reasonable efforts to make available for an interview with Settlement Class Counsel and settlement class counsel for the End Payor Plaintiffs and Automobile Dealership Plaintiffs (to the extent the End Payor Plaintiffs and Automobile Dealership Plaintiffs remain in the Collective Actions in which the Preliminary Approval Motions have been granted) and/or their experts unless otherwise agreed a total of eight (8) persons who are selected by Settlement Class Counsel, and which may consist of directors, officers, and/or employees of the DENSO Defendants at the time of the selection whom the parties reasonably and in good faith believe possess knowledge of facts or information that would reasonably assist Direct Purchaser Plaintiff(s) in the prosecution of claims for the Preliminarily Approved Collective Released Parts in the Collective Actions in which the Preliminary Approval Motions have been granted, provided, however, that the DENSO Defendants shall not be obligated to make available more than five (5) persons for interviews on any particular Preliminarily Approved Collective Released Part.  Interviews shall each be limited to a total of seven (7) hours over one (1) day.  To the extent that the person to be interviewed requests an interpreter, interviews shall be limited to a total of twelve (12) hours, which would occur over two (2) consecutive days at the request of the interviewee.  Each of the eight (8) persons shall be interviewed only once. Upon reasonable notice by Settlement Class Counsel, the DENSO Defendants shall use reasonable efforts to make available by telephone the persons who have been interviewed as set forth in this Paragraph 7(b) to answer follow-up questions for a period not to exceed two (2) hours.  The DENSO Defendants will in good faith consider requests for additional persons for interviews and depositions, if appropriate, in their discretion.  Nothing in this provision shall prevent the DENSO Defendants from objecting to the reasonableness of the identity and number of persons selected by

Settlement Class Counsel and settlement class counsel for the End Payor Plaintiffs and Automobile Dealership Plaintiffs to appear for interviews, for depositions, or as trial witnesses.

(c)  *Depositions*.  Upon reasonable notice after the all of the Preliminary Approval Motions have been granted or denied in all of the Collective Actions, the DENSO Defendants shall, at Direct Purchaser Plaintiff(s)' request, make their reasonable efforts (1) to make available to appear for deposition up to eight (8) persons who Settlement Class Counsel and settlement class counsel for the End Payor Plaintiffs and Automobile Dealership Plaintiffs (to the extent the End Payor Plaintiffs and Automobile Dealership Plaintiffs remain in the Collective Actions in which the Preliminary Approval Motions have been granted) select from among the same eight (8) persons who have been chosen for interviews pursuant to Paragraph 7(b) of this Appendix A, and (2) to provide up to eight (8) declarations/affidavits from the same persons who have been chosen for interviews and depositions pursuant to Paragraphs 7(b) and (c) of this Appendix A, provided, however, that the DENSO Defendants shall not be obligated to make available more than five (5) persons for deposition in any individual Action.  If the DENSO Defendants are unable to make those same persons available for depositions then Settlement Class Counsel may select another person.  The DENSO Defendants shall use their reasonable efforts to make that person available, and that person would then count towards the eight (8) person deposition limit. Each deposition shall be conducted at a mutually agreed upon date and time and shall each be limited to a total of seven (7) hours over one (1) day.  To the extent that the person to be deposed requests an interpreter, the deposition shall be limited to a total of twelve (12) hours, which would occur over two (2) consecutive days at the request of the deponent. Written notice by Settlement Class Counsel to the DENSO Defendants' counsel shall constitute sufficient service of notice for such depositions.  Nothing in this provision shall prevent the DENSO Defendants from

objecting to the reasonableness of the identity and number of persons selected by Settlement Class Counsel and settlement class counsel for End Payor Plaintiffs and Automobile Dealership Plaintiffs to appear for interviews, for depositions, or as trial witnesses.

(d)     *Trial Testimony*.   Upon reasonable notice, the DENSO Defendants shall make reasonable efforts to provide, for trial testimony, if necessary, up to eight (8) persons from among the persons who have been interviewed or deposed pursuant to Paragraphs 7(b) and (c) of this Appendix A, or otherwise deposed in the MDL Proceeding, as referenced in Paragraph 7 of this Appendix A, whom the parties reasonably and in good faith believe possess knowledge of facts or information that would reasonably assist the Direct Purchaser Plaintiff(s) in the prosecution of the claims for the Preliminarily Approved Collective Released Parts in the MDL Proceeding, provided, however, that the DENSO Defendants shall not be obligated to make available more than five (5) persons for trial testimony in any individual Action.  The DENSO Defendants shall not be required to make any individual available to testify more than once in any case.  Nothing in this provision shall prevent the DENSO Defendants from objecting to the reasonableness of the identity and number of persons selected by Settlement Class Counsel and settlement class counsel for the End Payor Plaintiffs and Automobile Dealership Plaintiffs (to the extent the End Payor Plaintiffs and Automobile Dealership Plaintiffs remain in the Collective Actions in which the Preliminary Approval Motions have been granted) to appear for interviews, for depositions, or as trial witnesses.

(e)     *Authentication*.   In addition to its Cooperation obligations set forth herein, at the request of Direct Purchaser Plaintiff(s) and subject to meet and confer with the DENSO Defendants, the DENSO Defendants agree to produce through affidavit(s) or declaration(s) and/or at trial, if necessary, in Settlement Class Counsel's discretion, representatives qualified to authenticate and/or establish as business records any of the DENSO Defendants' Documents

including transaction and/or cost data produced or to be produced, and to the extent possible, any Documents produced by Defendants or third-parties in the Collective Actions in which the Preliminary Approval Motions have been granted.  In addition, if not unduly burdensome, the DENSO Defendants agree to produce through affidavit(s) or declaration(s) and/or at trial, if necessary, representatives qualified to establish any other necessary foundation for admission into evidence.  The provisions in this Paragraph 7(e) do not apply to any English Translations or any other translations produced to Direct Purchaser Plaintiff(s).

      (f)      The Direct Purchaser Plaintiff(s) and Settlement Class Counsel agree they will not use the information provided by the DENSO Defendants or other Releasees or their representatives under Paragraph 7 of this Appendix A for any purpose other than the prosecution of the claims in the Collective Actions in which the Preliminary Approval Motions have been granted against Defendants other than the DENSO Defendants or other Releasees and will not use it beyond what is reasonably necessary for the prosecution of those claims or as otherwise required by law.  Except as otherwise provided herein, all Documents and other information provided pursuant to Paragraph 7 of this Appendix A shall be governed by the terms of the Protective Orders as if they had been produced in response to discovery requests, and all Documents and other information provided pursuant to the Collective Settlement Agreements will be deemed "Highly Confidential" under the protective orders that were or will be issued in the Action or MDL Proceeding unless otherwise agreed or ordered by the Court.  The Direct Purchaser Plaintiff(s) reserve the right to object to the DENSO Defendants' confidentiality designations at a later date. If the Direct Purchaser Plaintiff(s) plan to use any information included in the Documents other information provided pursuant to the Collective Settlement Agreements in their pleadings or any other briefs to be filed with the Court in the MDL Proceeding, the Direct Purchaser Plaintiff(s)

shall, at least ten (10) business days in advance, notify and confirm with the DENSO Defendants if the pleading or other briefs including information disclosed as part of the DENSO Defendants' Cooperation should be filed under seal in accordance with any Court orders.

(g)    The DENSO Defendants' obligations to provide Cooperation with respect to a particular Preliminarily Approved Collective Released Part under this Agreement shall continue only until: (i) the date that final judgment has been entered in the relevant Action against all Defendants as it relates to the Preliminarily Approved Collective Released Part in that particular Action; or (ii) otherwise ordered by the Court.

8.    Any dispute over the DENSO Defendants' Cooperation shall not affect the Release, Discharge, and Covenant Not to Sue contained in Paragraphs 30 and 31 of each of the Collective Agreements, or any other provision of those Collective Agreements.  If Settlement Class Counsel believes that the DENSO Defendants or any current employee, officer, or director of the DENSO Defendants has failed to cooperate under the terms of this Agreement, Settlement Class Counsel may seek an order from the Court compelling such Cooperation.  The DENSO Defendants agree that any such dispute may be presented to the Court on an expedited schedule.  Nothing in this provision shall limit in any way the DENSO Defendants' ability to defend the level of Cooperation it has provided or to defend its compliance with the terms of the Cooperation provisions in this Agreement.

9.    <u>Failure to Take Effect</u>

(a)    If this Agreement is rescinded, disapproved, otherwise fails to take effect, or if final judgment has been entered in a particular Action against All Defendants (collectively "Final Termination"), unless otherwise agreed by the DENSO Defendants, within sixty (60) days after Final Termination, the Direct Purchaser Plaintiff(s) must destroy all Cooperation Materials

related to the Released Part relevant to that Action received from the DENSO Defendants including all copies, abstracts, compilations, summaries, or any other form that reproduces or captures any of the Cooperation Materials related to that Released Part unless those materials were produced in the ordinary course of discovery or pursuant to the DENSO Defendants' ACPERA obligations. Direct Purchaser Plaintiff(s) must submit a written certification to the DENSO Defendants by the sixty (60) day deadline that affirms that the Direct Purchaser Plaintiff(s) have not retained any copies, abstracts, compilations, summaries or other form that reproduces or captures any of the Cooperation Materials related to the Released Part.

        (b)      In the event that this Agreement fails to receive Final Court Approval by the Court as contemplated in Paragraph 28 of the Collective Settlement Agreements, including final approval of the Settlement Class as defined in Paragraph 17 of the Collective Settlement Agreements, or in the event that it is terminated by either party under any provision in the Collective Settlement Agreements, the parties agree that Direct Purchaser Plaintiff(s) shall not be permitted to use or introduce into evidence against the DENSO Defendants and/or other Releasees, at any hearing or trial, or in support of any motion, opposition or other pleading in this Action or in any other federal or state or foreign action or arbitration or other proceeding alleging a violation of any law relating to the subject matter of this Action, any deposition testimony or any Documents provided by the DENSO Defendants and/or the Releasees, their counsel, or any individual made available by the DENSO Defendants pursuant to Cooperation (as opposed to from any other source or pursuant to a court order) as set forth in Appendix A unless those materials were produced in the ordinary course of discovery or pursuant to the DENSO Defendants' ACPERA obligations. Notwithstanding anything contained herein, the Direct Purchaser Plaintiff(s) are not relinquishing any rights to pursue discovery against the DENSO Defendants and other Releasees in the event

that this Agreement fails to receive Final Court Approval in this Action as contemplated in Paragraph 28 of the Collective Settlement Agreements, including final approval of the Settlement Class as defined in Paragraph 17 of the Collective Settlement Agreements, or in the event that it is terminated by either party under any provision herein.